Francine JACKSON, individually, and on behalf of her minor children and all other parents, relatives or minor children similarly situated, Plaintiffs,

v.

The DEPARTMENT OF PUBLIC WELFARE OF the STATE OF FLORIDA, Emmett S. Roberts, Director of the Department of Public Welfare for the State of Florida, Earl P. Schoenberger, Chairman of the Florida State Welfare Board, and their employees, agents and successors in office.

Civ. No. 68–21.

United States District Court, M. D. Florida, Ft. Myers Division.

July 27, 1970.

1152

T. Michael Foster, Gerald S. Joseph Cassidy, Michael Kantor, So. Florida Migrant Legal Service, Ft. Myers, Fla., Alfred Feinberg, Legal Services Program, Inc., Miami, Fla., for plaintiffs.

Earl Faircloth, Atty. Gen., Michael Schwartz, Asst. Atty. Gen., Tallahassee, Fla., S. Strome Maxwell, Dept. Atty., State Dept. of Public Welfare, Jacksonville, Fla., for defendants.

Before SIMPSON, Circuit Judge, LIEB, Chief District Judge and KRENTZMAN, District Judge.

## OPINION

KRENTZMAN, District Judge.

### JURISDICTION

This is a class action authorized by Rule 23(b) (2) of the Federal Rules of Civil Procedure. The class which plaintiff represents is all persons similarly situated who are needy parents of dependent children and their needy dependent children who are eligible for Aid to Families with Dependent Children (hereafter referred to as AFDC).

Federal jurisdiction is predicated upon the provisions of 28 U.S.C.A. §§ 1331, 1343(3), and 1343(4). This is an action authorized by 28 U.S.C.A. §§ 2201 and 2202, and 42 U.S.C.A. §§ 1983 and 1988.

The plaintiff seeks injunctive and declaratory relief challenging regulations promulgated and enforced by the defendants and their employees, agents and successors in office.[1] The State action is contested on the basis of alleged violations of both the Fourteenth Amendment to the Constitution of the United States and the Federal Social Security Act, 42 U.S.C.A. § 301 et seq. Pursuant to 28 U.S.C.A. § 2284 this 3-Judge Court has been convened.

The Court has heard the arguments of counsel and considered the memoranda, exhibits, and evidence received in this cause.

## PRELIMINARY DETERMINATIONS

### I

The State of Florida has been and is currently providing public assistance to needy persons in participation with the Federal Government in programs established under the provisions of the Social Security Act. The State's plan for categorical assistance programs has been approved by the Department of Health, Education and Welfare and federal funds are currently being supplied.

Basically, the Court's attention is called to four public assistance programs; Aid to the Aged, Aid to the Blind, Aid to the Disabled (cumulatively hereinafter referred to as non-AFDC), and Aid to Families with Dependent Children (AFDC). The plaintiff seeks to enjoin and declare unlawful the State's practice of computing grants distributed to AFDC recipients in a manner different from the method employed by the State to compute grants for non-AFDC programs.

In determining the amount of assistance to be distributed to a particular eligible recipient a set procedure is employed in all of the programs. The computations lead to an ultimate determination of budgetary need. The actual amount of payment is then based on this figure.

In all of the programs budgetary need is determined by the sum of the standard allowances for basic requirements taken together with the actual shelter expense of the recipient. (A maximum established shelter expense figure is used which varies according to family size.) The sum of the recipient's total needs is then balanced against the income received from sources other than the grant. The difference between the total budgeted need and this income is referred to as the budgetary deficit or unmet budgetary need.

The payment to non-AFDC recipients is equal to 100% of unmet budgetary need up to and including $75.00, the

---

1. In 1969 the name of the State Department of Public Welfare was changed to the State Department of Social Services; the State Welfare Board was renamed the State Board of Social Services. Section 409.015(1), Florida Statutes, F.S.A. Also in 1969 the functions and funds of the State Department of Social Services and the State Board of Social Services were transferred to the new Division of Social Services of the new State Department of Health and Rehabilitative Services, and the State Board of Social Services was abolished. Sec. 409.285(2), Florida Statutes, F.S.A.; Chapter 69–106 § 19(15), Laws of Florida 1969. Under the provisions of Rule 25(d), F.R. Civ.P., our judgment is binding on successor public bodies and officers, who are automatically substituted as parties.

maximum grant allowed in these programs. The payment distributed in the AFDC program is based on a percentage of unmet budgetary need.

Prior to July 1968 the grant paid to AFDC recipients equalled 10% of unmet budgetary need, up to a maximum of $85.00. On July 1, 1968, the maximum provision with regard to AFDC payments was removed. Between July 1, 1968 and December 31, 1968, AFDC recipients received a grant of 65% of unmet budgetary need, which was decreased to 57% between January 1, 1969 and January 31, 1969, and raised to 60% (the present figure) on February 1, 1969. During this period no change was made in the level of benefits paid to non-AFDC recipients.

At the present time an AFDC recipient with less than $125.00 of unmet budgetary need receives less than a non-AFDC recipient in an identical economic situation. For example:

| Unmet Budgetary Need | AFDC payment (60% of need) | Non-AFDC payment (100% of need up to $75.00) | Non-AFDC % of need |
|---|---|---|---|
| $ 50.00 | $30.00 | $50.00 | 100% |
| $ 60.00 | $36.00 | $60.00 | 100% |
| $ 80.00 | $48.00 | $75.00 | 94% |
| $100.00 | $60.00 | $75.00 | 75% |
| $125.00 | $75.00 | $75.00 | 60% |

In opposition to the plaintiff's claim of disparity in treatment, defendants contend that certain AFDC recipients are actually benefited by the present 60% method of computing payment. It is submitted that where unmet budgetary need exceeds $125.00 AFDC recipients are eligible for grants greater in amount than the $75.00 maximum payment allowed for non-AFDC claimants. It is argued that in some cases where the need is greater the current percentage method affords larger grants than were allowable prior to its adoption.[2] The number of cases where the present method results in an increased payment, however, must indeed be slight; the express

purpose in the change, i. e., to avoid financial catastrophe in view of increasing caseloads and the failure to receive the full appropriations requested from the State Legislature, would obviously be disastrously frustrated if a substantial portion of the recipients would be entitled to increases.

## II

In the interim between final hearing and preparation of the opinion in this cause the Court requested that further information be supplied by the parties touching particularly on whether any material developments have occurred with respect to the issues here. This additional information has been received and after consideration the Court has determined:

1. The State of Florida still maintains the four categorical public assistance programs previously mentioned. The methods employed for computing the grants for recipients in the respective programs has remained unchanged; AFDC recipients continue to receive grants determined by the application of the percentage standard to unmet budgetary need while non-AFDC grants are distributed without regard to percentage computations.

2. While previously there was some fear that the AFDC grants would be further reduced, additional appropriations were obtained from the State Legislature in December 1969. At the present time AFDC grants continue to be determined on the basis of 60% of unmet budgetary need.

3. After July 1, 1969, the State of Florida was advised by HEW that the State's AFDC plan was not in compliance with Section 402(a) (23) of the Social Security Act, 42 U.S.C.A. § 602 (a) (23), which requires the states to

2. Defendants' exhibit A sets out a hypothetical grant computation where an AFDC family has budgetary need of $263.25. Prior to July 1, 1968, the family would get $85.00, the maximum payment then allowed. This grant would amount to approximately 32% of need. Under the current plan the family would receive $158.25, or an 86% increase in the grant.

determine needs on an adjusted basis so as to reflect changes in living costs. Florida's plan was subsequently revised, however, and HEW has considered the state to be in compliance since December 17, 1969.

## THE ISSUES PRESENTED

The plaintiff contends:

(A) The different methods of computing the AFDC grant and the non-AFDC grant are impermissibly violative of the Federal Social Security Act and the Fourteenth Amendment to the Constitution of the United States in that they do not provide equal protection of the laws to welfare recipients who are similarly situated.

(B) The reduction in AFDC grants without a similar or corresponding reduction in non-AFDC grants is violative of Section 402(a) (23) of the Social Security Act.

(C) The aforementioned reduction in AFDC grants without a similar or corresponding reduction in non-AFDC grants constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment.

Counsel for the parties in this cause have been most diligent in providing the Court with excellent arguments and memoranda for its consideration. In addition to the assistance of counsel, the Court also now has the benefit of several valuable decisions which have been published following the final hearing in this matter.

## THE MERITS

### I

We deal first with plaintiff's contention that the State of Florida's method of determining AFDC payments in a manner significantly different from that in which non-AFDC payments are determined is violative of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff asserts that the AFDC programs and the non-AFDC programs are inseparably interconnected, with a common foundation or primary purpose of supplying public assistance to those in need. On the basis of this proposition plaintiff argues that the methods employed for computing grants must be uniformly applied in each of the four federal categorical assistance programs.

"The very essence of complainants' claims is that Florida has deprived them of the equal protection of the law in that there is no relevant constitutional distinction between the need of the indigent aged, the need of the indigent blind, or the need of the indigent disabled as compared with the need of the indigent child." [3]

■ This argument is most persuasive; the Court cannot deny that each of the programs is essentially concerned with the problem of need. Nevertheless, in considering the manner in which each program is to be operated the Court cannot act where reasonable differences in the purposes of the particular programs are found. The scope of judicial inquiry under the equal protection clause is determined by the threshold question of whether reasonable differences in the purposes of the pertinent legislation exist. Where rational differences are found the Court is precluded from further inquiry.

We believe that in the present case there are in fact different purposes established as the basis for each of the programs. This view is reached upon the Court's consideration of a thoroughly reasoned 3-Judge Court opinion handed down last year. In Jefferson v. Hackney, 304 F.Supp. 1332 (N.D.Texas 1969), the Court was constituted to determine initially the constitutionality of the Texas State Department of Public Welfare's across the board reduction of AFDC maximum payments. After suit was filed the Department announced the implementation of a new plan which involved a 50% reduction of grants to AFDC recipients. A separate suit was filed in the Western District of Texas

---

3. Plaintiff's Supplementary Pretrial Memorandum filed April 17, 1969, pages 9–10.

challenging the new regulation and seeking declaratory and injunctive relief. The complaint in the first action, brought by *Jefferson* and others, was amended and the two actions were consolidated. After exhaustive discussion and research, the Court concluded that Texas did not violate the Equal Protection Clause by paying only 50% of the unmet budgetary need to AFDC recipients in contrast to the payment of 95% to 100% of need to non-AFDC welfare recipients. The Court said:

" * * * The critical question is not whether differences in grants exist, but whether such differences are irrational under the circumstances and therefore constitutionally impermissible. To answer this question, we must look to the structure and the purposes of the Social Security Act and its various programs.

Plaintiffs contend that the only purpose of public welfare is the satisfaction of financial need. While this certainly is one of its purposes, the various programs established under the Social Security Act clearly indicate that other more diverse purposes are also present. It is these additional purposes which justify in large measure the difference in financial assistance accorded recipients in the various welfare programs. Under this view, the difference in grants between programs merely reflects the fact that disparate purposes call for dissimilar solutions.

By way of illustration we note a significant difference in emphasis between the three non-AFDC programs, and Aid to Families with Dependent Children. In the non-AFDC programs, the emphasis is primarily on the creation and the retention of the ability for self-care. Thus the OAA program furnishes financial assistance for "rehabilitation and other services to help individuals * * * attain or retain capability for self-care * * * " 42 U.S.C.A. § 301. Similar provisions appear in 42 U.S.C.A. § 1201 and § 1351 establishing the AB and APTD programs respectively. AFDC, on the other hand, is designed primarily to maintain and strengthen family life. 42 U.S.C.A. § 601 thus provides assistance:

'For the purpose of encouraging the case of dependent children in their own homes or in the homes of relatives by enabling each state to furnish financial assistance and rehabilitation and other services * * to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen the family life and to help such parents or relatives to attain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection * * * "

\* \* \* \* \* \*

"We are of the opinion that *each of the titles of the Social Security Act dealing with the four categories here involved stands alone. The State may exercise its powers independently for each of the programs and have different levels of payment for each program without running afoul of the Fourteenth Amendment.* This conclusion is not affected by the fact that Texas, in establishing standards of need, has defined the needs of the recipients in the four welfare categories as the same. Plaintiffs argue, in effect, that whatever differences may have existed between the needs of recipients in the various categories has been obliterated by this legislative action. The problem with this argument is that an identity of needs does not obscure the differences in the purposes and functions of the various programs. *Welfare programs do not all tend toward the same social objective. Self-help for the aged, blind and disabled may indeed pose a more pressing social problem than strengthening family life among recipients of AFDC.* This question is for the Legislature. Differing purposes beget dissimilar remedies. There remain priorities in time

and functions in alleviating human misery. Unless the Constitution mandates that all human needs be met, we must accept classifications and piecemeal solutions which are not egalitarian between all programs and all human beings." (Emphasis supplied.) 304 F.Supp. 1332, 1336–1337.

In the present case the same considerations have been taken into account and the Court determines that a rational basis for classification and resulting differing methods of treatment exists by virtue of the reasonable differences in purposes of the programs. The Court is therefore unable to say that the regulations in question here amount to arbitrary and capricious state activity violative of the Fourteenth Amendment.

The legislative appropriations have not been adequate to fund all of the programs sufficiently. The question of how available finances should be allocated and distributed rests initially with that body and its administrative agency. As the Jefferson decision further pointed out:

"In making the appropriation for the present biennium the Legislature could have considered numerous factors. The purpose, as set out in the Social Security program, for which grants are made to recipients in each category is a primary consideration. Legislators might well have considered the difference in health requirements of the aged, blind and permanently disabled as well as their inability to care for themselves and their unemployability. Of the four groups women with children are most likely to be able to work and receive no outside assistance. The Legislature might have considered that many mothers could work and would do so with some assistance which would enable them to keep their children in the home, particularly at this time when workers are sorely needed. The Legislature might also have thought they should be encouraged "to attain * * * capability for the maximum self-sup-

ported and personal independence * * as provided in the Act authorizing the AFDC program."

"Considering the different purposes of programs in the Social Security Act and the differences in the capacity for self-help among recipients in the various categories we cannot say that the action of the Legislature in providing less assistance for AFDC recipients than for the other recipients of welfare was 'without any reasonable basis and therefore * * * purely arbitrary. Morey v. Doud [354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485] supra'," 304 F.Supp. 1332, 1338.

We conclude that the State of Florida has not transgressed the Fourteenth Amendment by paying to AFDC recipients a percentage of need less than the percentage of need paid to non-AFDC recipients.

## II

We further conclude that the State of Florida has not violated the Social Security Act by computing payments to AFDC and non-AFDC recipients differently. This follows from our view, expressed in *Jefferson* that:

" * * * each of the titles of the Social Security Act dealing with the four categories here involved stands alone. The State may exercise its powers independently for each of the programs without running afoul of the Fourteenth Amendment." Jefferson v. Hackney, D.C., 304 F.Supp. 1332, 1337. If the terms of the Act are such that they justify different levels of payments to AFDC and non-AFDC recipients as rational and hence constitutional, it follows that the Act itself permits these different levels of payment. Certainly the Court has been unable to locate any provision in the Act proscribing different levels of payment to AFDC and non-AFDC recipients.

## III

We turn now to plaintiff's contention that Section 402(a) (23) of the Social

Security Act, 42 U.S.C.A. § 602(a) (23), prohibits the State of Florida from reducing AFDC benefits. Section 402(a) (23) was enacted on January 2, 1968 as part of the Public Law 90–248, and requires that:

"[The States shall] provide that by July 1, 1969 the amounts used by the State to determine needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted."

Plaintiff asserts that Section 402(a) (23) has been violated in two respects. First, it is plaintiff's position that Section 402(a) (23) requires the States to raise their standards of need so as to take into account rising costs of living no later than July 1, 1969, *and prohibits them from reducing the level of benefits below what they were on January 2, 1968*, lest the effect of the Section be only a juggling of bookkeeping entries. Second, plaintiff asserts that the State of Florida has not raised the standard of need as contemplated by Section 402 (a) (23).

### A

Several opinions agree with plaintiff's position that Section 402(a) (23) bars the States from lowering benefits paid beneath their level as of January 2, 1968. Lampton v. Bonin, 304 F.Supp. 1384 (E.D.La.1969) (dissenting opinion); Jefferson v. Hackney, *supra*. However, the Supreme Court of the United States has now ruled on this point and authoritatively decided against plaintiff's position by holding that Section 402(a) (23) "leaves the States free to effect downward adjustments in the level of benefits paid * * *."

"We think two broad purposes may be ascribed to § 402: First, to require States to face up realistically to the magnitude of the public assistance requirement and lay bare the extent to which their programs fall short of fulfilling actual need; second, to prod the States to apportion their payments on a more equitable basis. Consistent with this interpretation of § 402, a state may, after recomputing its standard of need, pare down payments to accommodate budgetary realities by reducing the percent of benefits paid or switching to a percent reduction system, but it may not obscure the actual standard of need." Rosado v. Wyman, 397 U.S. 397, 412–413, 90 S.Ct. 1207, 1218, 25 L.Ed.2d 442, 456 (1970).

■ We therefore reject plaintiff's contention that the State of Florida in reducing the percentage of unmet budgetary deficit paid (from 65% to 57% to 60%) violated the Social Security Act. Assuming that the reduction did in fact reduce the level of benefits actually paid,[4] this was a permissible procedure to cope with budgetary realities.

### B

Plaintiff next claims that the State of Florida has not raised the standard of need of AFDC recipients in accordance with the requirements of Section 402(a) (23). Two reasons are advanced in support of this claim. First, plaintiff maintains that the State of Florida has chosen an incorrect adjustment period, i. e., that period covering the cost of living increase required by the Section. Second, assuming the correctness of the chosen adjustment period, plaintiff contends that the cost of living increase during that interval was, according to the Bureau of Labor Statistics, greater than that claimed by the defendants for several of the items contained in the standard of need.

We have carefully reviewed the figures and memoranda submitted by the parties

---

4. Defendants dispute that a reduction in the level of benefits paid has taken place, contending that whereas the average AFDC grant in June 1969 was $81.51, the present AFDC grant (since January 1970) averages $90.05.

and find ourselves unable to agree with plaintiff.

*1*

Section 402(a) (23) provides that the states shall "provide that by July 1, 1969, the amounts used by the state to determine needs of individuals will have been adjusted *to reflect fully changes in living costs since such amounts were established."* (Emphasis supplied.) The question is what the Section means when it refers to the date the standards were *established.*

There is no dispute over the facts to which Section 402(a) (23) must be applied here. Effective July 1, 1968, the State of Florida upgraded the budgetary standard for food from $25.00 to $32.00 for an individual living alone. It was the State's intention to comply with the Section 402(a) (23) requirement prior to the deadline of July 1969 and it was thought at the time that if the food standard was upgraded this would meet the requirements of the Social Security Act. However, HEW later ruled that each AFDC budgetary item had to be upgraded. Therefore, to comply with the procedural changes requested by HEW it became necessary for the State to re-evaluate all budgetary items.

As a result of this re-evaluation, new standards of need for each of the five AFDC budgetary items were approved by HEW on December 17, 1969, and became effective in January 1970.

In calculating dollar amounts by which the standard for each budgetary item was to be increased, the Bureau of Labor Statistics publication "Consumer Price Index" was used. The indexes therein reflect changes in prices, i. e., in the cost of living. Movements of the indexes from one date to another are usually expressed as percentage changes rather than changes in index points because index points changes are affected by the level of the index in relation to its base period while percentage changes are not.

The State of Florida therefore used a percentage change method to determine the changes in living costs as to each AFDC budgetary item between the time the standard for the item was deemed to be the last date prior to the enactment of Section 402(a) (23) on which the needs standard was adjusted.

The adjustment period for all items except "shelter" was thus September 1966 —June 1969 since September 1966 was the last time the standard for these items was adjusted prior to January 2, 1968. The adjustment period for "shelter" was February 1953—June 1969 since the "shelter" standard had not been changed since February 1953.

Using the above mathematical methods and the foregoing adjustment periods, the following increases were made in each of the AFDC needs standards:

| Item | Date Standard Last Adjusted Prior to Enactment of § 402 (a) (23) | Increase in Living Costs Since Last Adjustment Date | Increase in Standard of Need |
|---|---|---|---|
| Food | September 1966 | 6.32% | 6.32% |
| Household Incidentals | September 1966 | 4.76% | 4.76% |
| Clothing | September 1966 | 14.54% | 14.54% |
| Personal Incidentals | September 1966 | 12.03% | 12.03% |
| Shelter | February 1953 | 34.38% | 34.38% |

Plaintiff construes the words "since such amounts were established," in Section 402(a) (23) to mean "since such amounts were last adjusted to accurately reflect living costs," assuming that there was such a time.

It is plaintiff's position that Section 402(a) (23) requires the states to measure their needs levels as of July 1, 1969, by the *actual* cost of the items contained in the standard. Plaintiff contends that if the State of Florida were allowed to simply choose as its adjustment dates those dates which correspond to the last adjustment in needs standard regardless of the relationship of that standard to the actual cost of living, then a cost of living increase applied to an already arbitrary standard would result in an unrealistic and false, albeit increased, standard. It is therefore plaintiff's contention that the adjustment date must be the date on which the standard was last evaluated

and adjusted to conform to the results of a cost of living study rather than just the last date on which it was adjusted.

Since plaintiff maintains that with the possible exception of when they were originally established, the State of Florida has never adjusted its needs standards to conform to a rational cost study reflecting actual expenses, it is her suggestion that the only date in Florida welfare history which approaches the requirements of Section 402(a) (23) is the date on which the standard was created for each item.[5]

The following considerations impel us to concur with the defendants' interpretation of Section 402(a) (23).

As a general rule courts place "great weight on the construction given to the Social Security Act by the Department of Health, Education and Welfare, which federal agency has the responsibility of carrying out administering its provisions." Lampton v. Bonin, 299 F. Supp. 336, 341 (E.D.La.1969). The Supreme Court, in analyzing the nebulous legislative history of Section 402(a) (23), had this to say of judicial respect for HEW's interpretation of the Section:

"While, in view of Congress' failure to track the Administration proposals and its substitution without comment, of the present compromise section, HEW's construction commands less than the usual deference that may be accorded an administrative interpretation based on its expertise, it is entitled to weight as the attempt of an experienced agency to harmonize an obscure enactment with the basic structure of a program it administers." Rosado v. Wyman, 397 U.S. 397, 415, 90 S.Ct. 1207, 1219, 25 L.Ed. 2d 442, 457.

We observed earlier that HEW approved the State of Florida's AFDC plan under Section 402(a) (23) on December 17, 1969. Apparently one of the reasons this approval was given is that HEW shares the view that the Section only requires the States sometime between January 2, 1968 and July 1, 1969, to raise the standard of need to compensate for rises in living costs since the standards were last adjusted.

HEW's official position has been set forth in these words:

"Against this background, it can be readily seen that Section 402(a) (23) deals with some of the methods and procedures that are used in the computation of assistance, but not all, and then only in a partial way. The State's need standards must be adjusted to reflect fully changes in living costs since such amounts were established. In short, the standards must be updated for the price changes *since the last time they were priced (before January 2, 1968)*. This does not say that a state must use a particular price index, or must add need items which were previously omitted, *or even reflect current prices. Rather, if the need standard was last priced at $100 in 1963 (whether or not at full current prices at that time), and living costs have since risen by 20%, the need standard must now be priced at $120.-00.*"[6] (Emphasis supplied).

In *Rosado*, the Supreme Court never specified what the period covering the cost of living increase required by Section 402(a) (23) was. Nevertheless we think our interpretation of the Section—which agrees with defendants'—is more consonant with the cautious approach in

---

5. According to plaintiff, these dates would be:
 Food —November 1957
 Household —November 1957
 Incidentals
 Clothing —November 1957
 Personal
 Incidentals —October 1963
 Shelter —February 1953

6. Page 20, Brief of Robert H. Finch, Secretary of Health, Education & Welfare as amicus curiae in Lampton v. Bonin, D.C., 299 F.Supp. 336, defendants' exhibit 9, filed May 2, 1969. See also the letter to State Agencies Administering Approved Public Assistance Plans dated October 17, 1969, and written by Acting Commissioner of Social Security, John J. Hurley, found in plaintiff's response filed May 4, 1970.

*Rosado.* Finding no clear legislative history, the Court interpreted Section 402 (a) (23) restrictively. No significant or far-reaching reforms in the welfare laws were to be educed from a bill of such blurred origin.

 The interpretation of Section 402(a) (23) suggested to the Court by plaintiff is no modest proposal. It is that Congress in passing the Section for the first time directed all fifty states to henceforth measure their needs levels by the actual cost of the items covered. While the practical consequences of such an interpretation might not be great since the states may accommodate increases in standards by reducing the levels of benefits, we think *Rosado* mandates a narrower reading of Section 402 (a) (23). It is more in accordance with *Rosado* [7] to construe Section 402(a) (23) as simply requiring the States, sometime between January 2, 1968 and July 1, 1969, to raise their needs standards to reflect increases in living costs since the last time the standards were adjusted prior to January 2, 1968.[8]

**2**

 Plaintiff's contention that the cost of living increase for the chosen adjustment period is greater than the figures for the State of Florida show must be rejected. The discrepancies between plaintiff's figures and defendants' arise from the fact that plaintiff used Bureau of Labor Statistics figures for the nation as a whole, while defendants used the Consumer Price Index for the southeastern region of the United States.[9]

The State of Florida has complied with Section 402(a) (23).

**IV**

 Finally, we hold that the State of Florida's reduction in AFDC payments was not violative of the Equal Protection Clause. This follows from the conclusion reached above that the AFDC and non-AFDC programs have discernibly distinctive purposes and that rational differences in purposes justify different levels of payment to AFDC and non-AFDC recipients. For elaboration, see Lampton v. Bonin, 299 F.Supp. 336, 338–343 (E.D.La.1969) (holding that a reduction in AFDC payments without a corresponding reduction in non-AFDC payments did not violate the Equal Protection Clause).[10]

The foregoing shall constitute Findings of Fact and Conclusions of Law. Plaintiff's request for injunctive and declaratory relief is denied, and the Clerk shall enter judgment for the defendants.

---

7. An excellent recent analysis views *Rosado* as interpreting Section 402(a) (23) to require each state "to increase its standard of need *so as to reflect changes in the cost of living since the standard was last evaluated* * * *" 3 Nat'l Institute for Education in Law & Poverty Clearinghouse Review, 321, 341 (1970) (Emphasis added.)

8. Other courts considering this issue have agreed that Section 402(a) (23) envisions an adjustment date of the last time the standard was adjusted prior to January 2, 1968. Rosado v. Wyman, 304 F.Supp. 1356, 1376 (E.D.N.Y.1969) ; Lampton v. Bonin, 304 F.Supp. 1384, 1386, 1390 (E.D.La.1969) (by implication). No case has been found supporting plaintiff's interpretation of the Section.

9. See the October 17, 1969, letter of Acting Commissioner Hurley, *supra* Note 6, which authorizes States to use "the United States Department of Labor, Bureau of Labor Statistics, Consumer Price Index, for the *appropriate region* [to] determine the current index price for the applicable items of living * * *." (Emphasis supplied).

10. We note that while the Supreme Court vacated the courts' orders in both Lampton v. Bonin cases and in Jefferson v. Hackney, see Lampton v. Bonin, 397 U.S. 663, 90 S.Ct. 1408, 25 L.Ed.2d 644 (1970) ; Jefferson v. Hackney, 397 U.S. 821, 90 S.Ct. 1517, 25 L.Ed.2d 807 (1970), the reasoning of the lower courts was not rejected by the Supreme Court.