**In re George WASHINGTON, Evelenia Washington, Debtors.**

**Bankruptcy No. 80–00165.**

United States Bankruptcy Court, E. D. Virginia, Alexandria Division.

Sept. 23, 1980.

John C. Somers, Woodbridge, Va., for the debtors.

Gerald M. O'Donnell, Trustee in Bankruptcy, Alexandria, Va.

Joanne Lasher, Woodbridge, Va., for creditors, C. Lacey Compton, Jr., and Compton, Bergere Y. Lubeley and for Arkley W. Smith, Jr.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

This controversy arises from the filing of a petition under Chapter 13 by George and

Evelenia Washington, husband and wife, the debtors, who filed a joint petition seeking relief under Chapter 13 on February 22, 1980. The debtors' Plan, filed the same date, proposed to make payment of allowed secured claims outside the Plan. Holders of unsecured claims were to be paid dividends of seventy percent of the allowed amount of their claims in the sum of $40.38 per month over a period of thirty–four months.

At the confirmation hearing the trustee recommended against confirmation on the grounds that the debtors had improperly classified the status of the claims such as to prevent confirmation of the debtors' Plan; and that the Plan had not been proposed in "good faith" as required under Section 1325(a)(3) of the Bankruptcy Code. The confirmation hearing was continued for the filing of memoranda by the debtors and the trustee as to whether the Plan should be confirmed by the Court.

Subsequent to the filing of memoranda, the debtors filed a modified Plan pursuant to Section 1323(a) of the Bankruptcy Code, wherein some but not all of the trustee's objections to the originally proposed Plan were cured.[1] Pursuant to subsection (b), the modifications in the amended Plan became part of the Plan on filing.

The debtors' amended Plan proposes to pay the trustee $64.03 per month to be distributed by him as follows:

1. State Bank of Prince
   William County, Virginia $1,406.41 at $39.07/mo.

2. Compton, Bergere &
   Lubeley $565.00 at $15.69/mo.

3. C. Lacey Compton, Jr. 106.00 at $ 2.94/mo.

Under the amended Plan these claimants are to receive one hundred percent on the allowed amount of their claims. The debtors allege that the Plan will require thirty–six months to complete. This period of time is within the provision of Section 1322(c) of the Bankruptcy Code.

The trustee alleges that the three claims listed above as unsecured in the debtors' Plan are, in fact, secured and as to each there was no compliance with Section 1325(a)(5) of the Bankruptcy Code.[2] Reference is made to Section 506(a) of the Bankruptcy Code which provides that "an allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."[3] The trustee contends that there exists adequate equity in the real property of the estate to entitle each claimant to be secured claimant should this Court determine that each of these claimants has a lien against the real property of the estate.

In regard to the claim of the State Bank of Prince William County ("State Bank"), the debtors acknowledge in their petition that a judgment lien was entered in favor of State Bank prior to the filing of the petition in these proceedings.[4] The trustee relies upon Virginia Code Section 8.01–458 (1977 Replacement) which provides that a

1. The modified Plan makes provision for the holders of secured claims to retain their liens, and provides for an increase in the percentage of payments to be allowed general creditors from seventy percent to one hundred percent.

2. This subsection provides that "(a) [t]he Court shall confirm a plan if–(5) with respect to each allowed secured claim provided for by the plan–
   "(A) the holder of such claim has accepted the plan;
   "(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

"(C) the debtor surrenders the property securing such claim to such holder[.]"

3. Section 101(28) of the Bankruptcy Code provides a new and broad definition of what constitutes a "lien." A lien is defined as a "charge or interest in property to secure payment of a debt or performance of an obligation."

4. Arkley W. Smith, Jr., in his objection to the Plan, alleges that he co–signed a note with the debtors, payable to State Bank in the face amount of $2,700.00. This note was not timely paid. On or about June 9, 1977, State Bank allegedly obtained a judgment against the debtors and Smith for the sum of $1,859.64, plus interest and attorney's fees.

**228**

judgment rendered for money in Virginia constitutes:

"[A] lien on all the real estate of or to which the defendant in the judgment is or becomes possessed or entitled, from the time such judgment is recorded on the judgment lien docket of the clerk's office of the county or city where such land is situated."

The trustee argues that State Bank's judgment constitutes a lien on real property of the estate and, as such, is a secured claim pursuant to Section 506(a).[5]

The debtors' argument that State Bank is an "unsecured creditor" which happens to possess a "judicial lien" against the debtors' real property (i. e., the debtors' residence) appears to be without foundation.[6] In Virginia, "[a] judgment lien is a right given the judgment creditor to have his claim satisfied by the seizure of the land of his judgment debtor." 11A Michie's Juris., *Judgment and Decrees*, § 47 (1978).

The claims of the law firm of Compton, Bergere and Lubeley and of C. Lacey Compton, Jr., arise out of the same deed of trust document, a second Deed of Trust executed and recorded against the real property of the estate. A Deed of Trust was executed on December 19, 1975, in the amount of $4,227.51 securing a promissory note signed by the debtors payable to Arkley W. Smith, Jr. C. Lacey Compton, Jr., is the trustee on the Deed of Trust. On or about July 24, 1979, the note was allegedly in default. The holder of the note directed Compton, as trustee, to notify the debtors that payments due on said note were to be accelerated and therein made demand for payment in full. The debtors were allegedly notified thereafter by the trustee, on or about August 10, 1979, that the foreclosure proceedings would be instituted.

The trustee further asserts that as a result of exercising the terms and conditions of the second Deed of Trust, Compton incurred certain expenses in advertising a Notice of Foreclosure as well as performing other legal services which he performed on behalf of his firm. The note provides for expenses and "reasonable attorney's fee[s] in case th[e] note [is] not paid." The Deed of Trust provides for a commission to the trustee in the event of a foreclosure.

The debtors acknowledge that the second Deed of Trust is a secured claim which is secured by the debtors' residence. The debtors have set forth in their petition a value of $59,000.00 as constituting the present market value of their residence. J. T. Barnes holds a first Deed of Trust on the debtors' residence in the principal amount of $37,076.04. Thus, the debtors have $21,923.96 of equity value in the residence. Section 506(b) of the Bankruptcy Code provides:

"To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided under the agreement under which· such claim arose."

This means that any reasonable fees, costs or charges provided under such an agreement "are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim." House Report No. 95–595, 95th Cong., 1st Sess.

---

**5.** The debtors refer to Section 1322(b)(2) of the Bankruptcy Code which permits a debtor to modify the true rights of holders of secured claims other than a claim secured by a "security interest" in the debtor's residence. The concept of "lien" under the Bankruptcy Code is divided into three categories: "judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive and are exhaustive ...." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 312, U.S.Code

Cong. & Admin.News 1978, pp. 5787, 6262. Whether State Bank's claim may be modified, under Section 1322(b)(2), is apparently rendered moot since the amended Plan calls for a one hundred percent payment to be made to State Bank.

**6.** The debtors do acknowledge that State Bank's lien "will exist as a lien against the residence of the debtors after the plan is consummated to the extent of its unpaid balance."

(1977) 356, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312.

It is axiomatic that a Chapter 13 Plan which classifies claims must provide equal treatment for each claim within a particular class. 11 U.S.C. § 1322(a)(3); *see In re Tatum*, 1 B.R. 445, 446 (Bkrtcy., S.D.Ohio 1979). Accordingly, it would appear that under the facts in the instant matter, the fees and expenses arising out of the Deed of Trust are secure, just as principal and interest arising out of a deed of trust are secure.

No holder of a secured claim had accepted the Plan as of the date of the first meeting of creditors. Arkley W. Smith, Jr., a holder of a secured claim, has filed an objection to the Plan. The State Bank, C. Lacey Compton, Jr., Trustee, and Compton, Bergere and Lubeley, who allege to be holders of secured claims, have also filed objections to the Plan.

Clearly, confirmation of a Chapter 13 Plan must be preceded by an independent analysis of the facts to satisfy the Court that all the requirements of Section 1325(a) are met.

The fundamental purpose of Chapter 13 is "to facilitate the adjustment of debts through extension and composition plans proposed by individuals with regular income." *In re Beaver*, 2 B.R. 337, 339 (Bkrtcy., S.D.Cal.1980). A debtor should be encouraged to make payments which he can reasonably afford over a reasonable period of time as provided for by statute.[7]

Although not raised by the Trustee, the Court must consider whether the debtors, in the instant matter, have the ability to make the payments contemplated under the Plan

and comply therewith. 11 U.S.C. § 1325(a)(6). This requirement is analogous to the "feasibility test" under the Bankruptcy Act.

In the case sub judice, the debtor husband is an unemployed plasterer who has been disabled since November 1976. His wife is not employed. He receives $366.00 semi–monthly from workmen's compensation. In 1979, his annual gross income was $9,516.00. The debtors' future monthly expenses, as alleged, are as follows:

| | | |
|---|---|---|
| 1. | Mortgage payment | $395.00 |
| 2. | Utilities (Electric $50.00, Heat $13.00, Water $16.00, Telephone $17.00) | 98.00 |
| 3. | Food | 80.00 |
| 4. | Transportation | 25.00 |
| 5. | Payment to Arkley W. Smith | 25.00 |
| | TOTAL | $623.00 |

After making their $64.03 per month payment to the Trustee, the debtors have a cushion of $44.93. No allowance for clothing, laundry and cleaning or medical care has been budgeted in the Plan. The absence of funds allocated for even occasional visits to medical professionals (*i. e.*, doctors, dentists) has been a matter of concern to courts which must confirm a plan. *E. g., In re Hockaday*, 3 B.R. 254, 256 (Bkrtcy., S.D. Cal.1980). Another concern is an awareness by the courts that the present high rate of inflation may place a strain on debtors who often must rely on fixed incomes. As noted in *In re Lucas*, 3 B.R. 252, 254 (Bkrtcy., S.D.Cal.1980), the rate of inflation is a significant factor to be considered in determining the feasibility of a Chapter 13 Plan.

The debtors propose to make a one hundred percent payment to the claimants acknowledged as secured claimants in the

---

**7.** With respect to holders of unsecured claims a plan which formulates a debtor's "reasonable ability" to pay his debts under a Chapter 13 plan is not synonymous to what might constitute his "best efforts." In *General Finance Company of Virginia v. Powell*, 2 B.R. 314, 316 (Bkrtcy., E.D.Va.N.D.1980), the court observed that the "best effort" standard need not be applied in a court's deliberation in approving a Chapter 13 plan. The court stated:

"[O]ne of the proposed amendments to the Bankruptcy Code pending before the Con-

gress is the 'technical amendments' bill which would amend 11 U.S.C. 1325(a)(3) to require a debtor's best effort. S. 658 96th Cong., 1st Sess. section 183. It should be obvious, then, that this is not now a requirement for confirmation."

*See In re Iacovoni*, 2 B.R. 256 (Bkrtcy., D.Utah 1980).

Holders of secured claims are provided for in 11 U.S.C. § 1325(a)(5) wherein a debtor is given three options from which to deal with secured claimants. *See* note 2, *supra.*

Plan. The above–described monthly expense list includes the mortgage payments owed to J. T. Barnes. The principal owed by the debtors is $37,076.04. The amount owed to Arkley W. Smith, the holder of a second Deed of Trust secured by the debtors' residence, is in dispute. The debtors contend that $1,462.00 is owed on the Deed of Trust and installments in arrears amount to $25.00. Smith contends that the amount claimed is actually $4,227.51, including interest at ten percent from December 19, 1975. Smith contends further that the installment in arrears is greater than $25.00.

The debtors concede that there is a delinquency in the first Deed of Trust to J. T. Barnes in the amount of $2,054.00. The Plan calls for this arrearage to be cured on or about November 1, 1980. The Plan contemplates that payment will be made through an award from Workmen's Compensation Disability or the refinancing of the debtors' residence, or through the sale of their residence. Section 1322(b)(8) provides that the Plan may provide for the payment of claims "against the debtor from property of the estate or property of the debtor." Exempt property of the debtor may provide a source of payment. Thus, the Bankruptcy Code provides for a substantial enlargement of the sources of payment available to meet the debts owed by the debtor to his creditors from that stated under the Bankruptcy Act.

The trustee argues that the debtors have not submitted their Plan for confirmation in good faith. A debtor's motive in proposing a Chapter 13 Plan has been deemed a factor to be considered by the courts in determining whether a Chapter 13 Plan should be confirmed. *E. g., In re Coleman*, 2 B.R. 348 (Bkrtcy., W.D.Ky.1980), (length of time proposed in plan unreasonable to cure default in owed arrearage);[8] *In re Anderson*, 3 B.R. 160 (Bkrtcy., S.D.Cal.

1980), (debtors attempt to use Chapter 13 Plan merely to rewrite secured contracts and avoid proceeding under straight bankruptcy provision of Chapter 7); *In re Hall*, 4 B.R. 341 (Bkrtcy., E.D.Va.R.D.1980), (absence of meaningful and substantial payments to unsecured creditors).[9]

 The Court is of the opinion that Section 1325(a)(5) of the Bankruptcy Code must be complied with as the creditors in question are holders of secured claims. In addition, the Court has no alternative but to find that the Plan is not feasible nor was it proposed in good faith.

Confirmation will be denied and an appropriate order will enter.

---

**8.** As the *Coleman* court rendered its decision based on the application of the "reasonable time" concept under § 1322(b)(5) of the Bankruptcy Code, the court declined to address the issue of good faith raised by the trustee.

**9.** The court in *In re Bloom, et al.*, 3 B.R. 467, 472, 6 B.C.D. 141, 144 (Bkrtcy., C.D.Cal.1980)

observed that if the real motive and purpose in a proceeding under Chapter 13 "is to obtain a discharge of the debts without a reasonable and substantial payment to creditors, ... the court should recognize the case for what it is, an illusion."