In re Robert C. GRIGGS, Jacqueline M. Griggs, Debtors.

COMMONWEALTH of Pennsylvania DEPARTMENT OF PUBLIC WELFARE, Plaintiff,

v.

Robert C. GRIGGS, Jacqueline M. Griggs, Defendants.

Bankruptcy No. 79–02257K.
Adv. No. 80–0055K.

United States Bankruptcy Court,
E. D. Pennsylvania.

July 7, 1981.

Henry J. Sommer, Philadelphia, Pa., for debtors/plaintiffs.

Carol A. Genduso, Jason W. Manne, Asst. Counsel, Dept. of Public Welfare, of Pa., Harrisburg, Pa., for defendants.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

The issues before the court are: (1) whether a confession of judgment contained in a welfare reimbursement agreement constitutes a judicial lien on the real property of the debtors and (2) if the confession of judgment constitutes a judicial lien, whether considerations of federalism preclude the application of § 522(f) of the Bankruptcy Code to such a lien held by the Pennsylvania Department of Public Welfare (D.P.W.). We conclude that the lien, which the D.P.W. had by virtue of a confession of judgment against the debtors, was a judicial lien, not a security interest, for purposes of section 522(f)(1) of the Bankruptcy Code ("the Code"). We further conclude that the constitutionality of section 522(f)(1), as applied to the D.P.W.'s lien, cannot be adequately resolved at this time because of the limited evidence submitted in the D.P.W.'s Motion for Summary Judgment and debtors' Cross-Motion for Summary Judgment. Accordingly, a further hearing of this action will be scheduled to allow the debtors and the D.P.W. to submit additional evidence concerning the constitutional claim.

The facts of the instant case are as follows.[1] Debtors are active public assistance recipients. Pursuant to the Act of June 24, 1937, P.L. 2045 § 4, as amended; Pa.Stat. Ann. tit. 62, § 1974 (Purdon), debtors signed a reimbursement agreement granting the D.P.W. the authority to enter judgment against them and thereby obtain a lien on their real property. Debtors entered into this agreement as a condition to receiving welfare assistance. Plaintiffs, the debtors, now seek to avoid the fixing of the lien obtained by the defendant by virtue of the confession of judgment.

Debtors each claim an exemption of $7,500 in their personal residence pursuant to section 522(d)(1) of the Code.[2] Furthermore, they seek relief under § 522(f)(1) which permits a debtor to avoid the fixing of a judicial lien on an interest in property to the extent that such lien impairs an exemption to which the debtor would have been entitled.[3] The D.P.W. maintains that the lien obtained by the confession of judgment is not a judicial lien within the meaning of the Code, but rather takes the form of a security interest or a statutory lien and, therefore, is not subject to avoidance under § 522(f)(1). However, should the lien be classified as a judicial lien, the D.P.W. argues the lien may not be avoided because an exemption of the debtor is unimpaired. Alternatively, if the lien impairs an exemption to which debtor is entitled, the D.P.W. avers that considerations of federalism and congressional intent mandate § 522(f)(1) be held unconstitutional when applied to the Pennsylvania welfare lien program.

## I. The Nature of the D.P.W.'s Interest in the Real Property of the Debtors.

■ Pursuant to section 522(f)(1) of the Bankruptcy Code, a lien may be avoided if it is a "judicial lien." The D.P.W. asserts that its lien obtained via a confession of judgment is not a judicial lien, but rather a security interest or, alternatively, a statutory lien. We conclude the D.P.W.'s lien is a judicial lien for purposes of § 522(f)(1) and can be avoided to the extent it impairs an exemption.

An examination of the legislative history of the Bankruptcy Reform Act clearly indicates that the terms "judicial lien," "security interest," and "statutory lien" are to be mutually exclusive. Both House Report 95–595 and Senate Report 95–989 state:

In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. *Those three categories are mutually exclusive* and are exhaustive except for certain common law liens. (emphasis added).

[1978] *U.S.Code Cong. & Ad.News*, 5787, 5811, 6229.

In short, D.P.W.'s lien can only be classified in one of the three definitional categories.

A security interest is defined in the Code as a "lien created by agreement." *See,* 11 U.S.C. § 101(37) (1979). This definition is an adaptation of a U.C.C. § 1–201(37) (1962 version) security interest.

Unlike the U.C.C. security interest, however, the Bankruptcy Code definition is broader in that it includes real estate security. H.R.Rep.No.95–595, 95th Cong., 1st Sess. 313–14 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess. 26 (1978). The D.P.W. argues that Congress' broadening of the Code definition of a security interest supports their contention that a welfare lien falls within the definitional confines of that

---

**1.** This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

**2.** Section 522(d)(1) allows a debtor to exempt up to $7,500 of his interest in any real property. Section 522(m) allows *each* debtor in a joint case to take such an exemption.

**3.** Section 522(f)(1) provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien.

11 U.S.C. § 522(f)(1) (1979).

term. Yet, to give the Code version of a "security interest" such an expansive reading so as to include any type of lien arrangement, regardless of traditional security interest requirements, would distort the general nature of a security interest. In addition, to adopt the D.P.W.'s contention would be contrary to congressional intent and accepted rules of statutory interpretation. Accordingly, although the Code broadens the definition of a security interest, it does so *only in respect to the inclusion of a real estate security interest.* We must look to state law to determine the validity of the interests asserted by the parties in bankruptcy.

█ Contrary to the D.P.W.'s claim, there exists little similarity between a U.C.C. security interest and a confessed judgment. The D.P.W. asserts that the reimbursement agreement which the debtors entered into as a condition to receiving assistance doubles as a Bankruptcy Code security agreement. The general requirements for a U.C.C. security agreement under Pennsylvania law were articulated in *In re Bollinger Corp.*, 614 F.2d 924 (3rd Cir. 1980). The court in *Bollinger* set forth the minimal requirements for the creation of an Article Nine security agreement under Pa. Stat.Ann. tit. 12A, § 9–203(1)(b) (Purdon). In order to create a security agreement, there must be: (1) a writing (2) signed by the debtor and (3) a description of the collateral or the types of the collateral contained in the writing. *Id.* § 9–203, Comment 1. The D.P.W.'s Reimbursement Agreement lacks the essential requirement of a sufficient description. Recent decisions have held that this, in itself, is sufficient to preclude the creation of a security interest in the debtors' real estate. *See In re Smith*, Bk. No. 80–00081 (M.D.Pa. Dec. 10, 1980); *In re Bollinger*, 614 F.2d at 926.

There exists a further distinction between a U.C.C. security interest and the D.P.W.'s confessed judgment. A valid security interest is created by the contract or security agreement itself, and not by recordation. *See* Pa.Stat.Ann. tit. 12A, § 9–201 (Purdon). However, the confessed judg-

ment which the D.P.W. obtained by virtue of the reimbursement agreement is not a lien until it is recorded. The lack of a sufficient description, along with the fact that the D.P.W.'s lien comes into existence only upon recordation, is sufficient to warrant this Court to conclude, as a matter of law, that no security interest was created in debtors' residence by their signing the reimbursement agreement.

The D.P.W. further argues that should their lien be outside the definitional parameters of a Code security interest, their lien should be characterized as a statutory lien. A statutory lien is defined in the Bankruptcy Code at section 101(38):

> (38) "statutory lien" means lien arising *solely* by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute;
> 
> . . .

11 U.S.C.A. § 101(38) (emphasis added).

It is beyond dispute that the D.P.W. lien arises by authority of statute, yet the unequivocal classification of the lien as statutory is not possible. The legislative history pertaining to the definition of a statutory lien found at § 101(38) states:

> the definition excludes judicial liens and security interests, whether or not they are provided for or are dependent on a statute. A statutory lien is only one that arises *automatically*, and is not based on an agreement to give a lien or a judicial action. Mechanics', materialmen's, and warehousemen's liens are examples. Tax liens are also included in the definition of statutory liens. (emphasis added)

H.R.Rep.No.95–595, 95th Cong., 1st Sess., 314 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess., 27 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5813, 6271.

While the D.P.W.'s lien arises through statutory authority, the language of Pa.

Stat.Ann. tit. 62, § 1974 (Purdon)[4] does not automatically give rise to a judgment but rather permits bringing suit to obtain a judgment lien through judicial process. In other words, the fact that judicial proceedings are necessary to bring such liens to full force and effect, significantly excludes them from being classified as statutory liens for bankruptcy purposes. *See In re Waite*, 11 Bkrtcy. 608 (M.D.Pa. May 29, 1981) (D.P.W.'s lien not a statutory lien).

We conclude that the reimbursement agreement signed by the debtors as a condition to receiving assistance did not constitute a security agreement. We further conclude that the lien obtained by the D.P.W. by virtue of the confession of judgment was a judicial lien, not a security interest nor a statutory lien. Section 101(27) of the Code defines "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other judicial process."[5] Similar language is found in section 67(a) of the Bankruptcy Act (the Act) which provides that certain liens can be avoided, i. e., those obtained by "attachment, judgment, levy or other legal or equitable process or proceeding ...". Elaborating on the above section of the Act, *Collier on Bankruptcy* states that liens arising from judgments by confession have always been regarded as judicial liens. 4 *Collier on Bankruptcy*, § 67.08 at fn. 1, p. 117 (14th ed.). The court, in *In re Smith*, Bk. No. 80–00081 (M.D.Pa. Dec. 10, 1980), recently held that the same interpretation must be given the terms under the Code as was given under the Bankruptcy Act. We are in full accord with the holding in *Smith.*

The D.P.W. asserts that the confession of judgment is so unlike the usual judicial lien, that for this Court to hold, as a matter of law, that its lien falls within the definitional parameters of a Code judicial lien would be contrary to general principles of statutory interpretation. To support this contention, the D.P.W. argues that their lien is taken contemporaneously with the giving of value and is not taken as part of a debt collection process. These factors alone, D.P.W. argues, warrant the exclusion of the lien obtained by the confession of judgment from the category of a judicial lien.

We cannot agree with this interpretation. The lien in question arose when the D.P.W. recorded the reimbursement agreement. This, in itself, was an exercise of judicial process and the fact that the parties agreed that this should be done did not change the nature of the act. Furthermore, every bankruptcy court which has faced this issue has ruled adversely to the D.P.W.'s position that a confessed judgment is not a judicial lien. *In re Waite*, Bk. No. 80–00259, Adv.No. 80–0231 (M.D.Pa. May 27, 1981); *In re Natale*, 5 B.R. 454, 6 B.C.D. 784 (Bkrtcy.E.D.Pa. 1980); *In re Smith*, Bk. No. 80–00081 (M.D.Pa. Dec. 10, 1980). Accordingly, the debtors may avoid the D.P.W.'s judicial lien to the extent it impairs an exemption pursuant to § 522(f)(1).

## II. The Impairment of an Exemption by D.P.W.'s Judicial Lien.

Under § 522(f)(1), the debtor may avoid the fixing of a judicial lien only to the extent that such lien impairs an exemption to which the debtor would otherwise be entitled. The D.P.W. argues that its lien does not impair an exemption because the lien is a liability of the debtor's property, rather than a personal liability of debtor. We find this argument curiously lacking in logic and totally unpersuasive. The language of the controlling section, § 522(f)(1), fails to make any distinction whatsoever between different types of judicial liens on the basis of whether they secure a debt of the debtor or a debt of the property. The debtor may avoid any judicial lien which

---

**4.** Section 4 of the Support law (62 P.S. § 1974) reads in part as follows:

"(a) Except as limited by subsection (c) hereof the real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial ... if such property was owned during the time such expenses were incurred or during the time such expenses were incurred from which the ownership of the property resulted."

**5.** 11 U.S.C. § 101(27) (1979).

impairs an exemption, so long as it is a lien on the debtor's interest in the exempt property. Clearly, the D.P.W.'s lien is on the property of the debtors.

Furthermore, the parties in this action have stipulated that the entire interest of the debtors in their personal residence is exempt under § 522(d)(1).[6] Accordingly, we hold the D.P.W.'s lien impairs this exemption and may be avoided in its entirety.

III. Considerations of Federalism and the Application of Section 522(f)(1) to a Judicial Lien held by the D.P.W.

The D.P.W. contends that the application of § 522(f)(1) to the state impermissibly interferes with Pennsylvania's traditional governmental function of providing welfare assistance to qualified recipients, thereby violating the Tenth Amendment to the United States Constitution.[7] D.P.W.'s Tenth Amendment attack upon § 522(f)(1) rests upon the decision of the United States Supreme Court in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). In that case, the Court held that a 1974 congressional amendment to the Fair Labor Standards Act which had the effect of extending the minimum wage and maximum hour provisions of the Act to employees of states and their political subdivisions was not a valid exercise of the authority granted to Congress under U.S. Const. art. I, § 8, cl. 3, inasmuch as the 1974 amendment, by requiring disbursement of state funds, had the effect of displacing "state policies regarding the manner in which [the states] will structure delivery of those governmental services which their citizens require." *Id.* at 847, 96 S.Ct. at 2472. The crux of the D.P.W.'s contention is that the providing of welfare assistance to qualified recipients is a traditional government function in Pennsylvania. D.P.W. claims that the bankruptcy clause,[8] like the commerce clause, is subject to *Tenth* Amendment scrutiny, and that § 522(f)(1) when applied to the welfare lien program, impermissibly interferes with the state's ability to carry out a traditional government function reserved to the state; the providing of welfare assistance.

Debtors, in turn, argue that the application of *National League of Cities* is inappropriate because any special treatment to which the state may have been entitled has been waived. Alternatively, debtors assert that the welfare program through which they received benefits, the Aid to Families with Dependent Children program (AFDC), was not such an integral function of the state, but was rather a cooperative federal-state program arising under Title IV of the Social Security Act.[9]

Resulting from the particular procedural posture of this action, the constitutionality of § 522(f)(1) as applied to the D.P.W.'s lien cannot be sufficiently resolved at this time. The D.P.W. has filed a Motion for Summary Judgment pursuant to Rule 756 of the Rules of Bankruptcy Procedure.[10] Debtors subsequently filed a Cross-Motion for Summary Judgment. Rule 756 of the Rules of

---

6. 11 U.S.C. § 522(d)(1).

7. U.S.Const. amend. X—The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

8. U.S.Const. art. I, § 8, cl. 4 provides that Congress shall have the power "To establish ... uniform laws on the subject of Bankruptcies throughout the United States."

9. In *Halderman v. Pennhurst State School and Hospital*, 612 F.2d 84, 98 (3rd Cir. 1979) (en banc), the court held that the State of Pennsylvania, by accepting federal funds under the Developmental Disabilities Services and Facilities Construction Act, has consented to federally mandated standards for the treatment and rehabilitation of the developmentally disabled. *See also City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), where the Court held that cities and subdivisions of a state that engage in anticompetitive practices without authorization are subject to federal antitrust liability. The court in *Lafayette* gave scant attention to *National League of Cities*, thus suggesting that even under the commerce clause, federal statutes may be enforced against the states. *See* 435 at 423, 98 S.Ct. at 1142.

10. Fed.R.Civ.P. 56, applicable to adversary proceedings through Rule 756 of the Rules of Bankruptcy Procedure.

Bankruptcy Procedure requires the moving party to show that they are entitled to judgment as a matter of law. In other words, the burden is on the moving party to establish that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress and Company*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). We conclude, as a matter of law, that debtors have met their burden with respect to the issue of whether the confession of judgment contained in the reimbursement agreement is a judicial lien.

We further conclude that for the proper adjudication of the constitutionality of § 522(f)(1), the D.P.W. must put forth additional evidence to enable this Court to determine whether the state's interests involve functions essential to a separate and independent existence. In addition, a *National League of Cities* scrutiny requires a balancing of the federal interests, on the one hand, against the degree of federal intrusion upon state autonomy on the other. To effectuate this balancing process, the D.P.W. must put forth evidence indicating the impact of § 522(f)(1) upon the Commonwealth.

Alternatively, the debtors must put forth sufficient evidence to support their contention that the balancing approach of *National League of Cities* is inapplicable to the present situation. Specifically, the debtors must establish the existence of a cooperative federal-state funded program. Therefore, pursuant to Fed.R.Civ.P. 56(f), an order will be entered granting a further hearing in this action to permit the D.P.W. and the debtors to submit the aforesaid evidence on the constitutional issue.