In re Willie Curtis BIDDLE and Cathy
L. Biddle, Debtors.

Willie Curtis BIDDLE, Cathy L.
Biddle, Plaintiffs,

v.

INTERNAL REVENUE SERVICE and
Child Support Recovery Unit, Black
Hawk County, Iowa, Defendants.

Bankruptcy No. 82–02195.
Adv. No. 82–0545.

United States Bankruptcy Court,
N.D. Iowa.

July 12, 1983.

Michael C. Dunbar, Trustee; James H. Reynolds, U.S. Atty., Northern Dist. of Iowa, Sioux City, Iowa, Helen L. Duncan, Trial Atty., Tax Division, Dept. of Justice, Washington, D.C., for IRS.

W.H. Gilliam, Des Moines, Iowa, for debtors.

W. Richard White, Waukon, Iowa, for Iowa Dept. of Social Services.

Sara Kersenbrock, Waterloo, Iowa, for Child Support Recovery Unit.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, and *ORDERS* Granting Motion for Summary Judgment and Denying and Dismissing Complaint

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court upon proper notice is the determination of whether the diversion of Debtors' income tax overpayments to the State of Iowa Child Support Recovery Office by the Internal Revenue Service is a preferential transfer within the meaning of 11 U.S.C. § 547(b). The matter was submitted to the Court upon a Motion for Summary Judgment by the United States of America, which was subsequently taken under advisement.

A defending party may at any time move, with or without supporting affidavits, for summary judgment in his favor. Federal Rule of Civil Procedure (FRCP) 56(b). Summary Judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). It is appropriate for a court to render Summary Judgment when "it is quite clear what the truth is." *Sartor v. Arkansas Natural Gas Corporation*, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944).

The Court must individually examine the facts of each particular case to determine whether or not summary judgment is appropriate. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259, 88 S.Ct. 1575, 1577, 20 L.Ed.2d 569 (1968). The moving party has the burden to prove that there is no genuine issue of material fact to be decided. *See, First National Bank of Arizona v. Cities Service Co.*, 391 U.S. at 289, 88 S.Ct. at 1592. *See, also, Percival v. General Motors Corp.*, 539 F.2d 1126, 1129 (8th Cir.1976).

In ruling upon a motion for summary judgment, the court must view the facts on the record in the light most favorable to the party opposing the motion, *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 456 (1962), and all reasonable inferences which can be drawn from the underlying facts should be resolved in favor of the party opposing the motion. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). *See, also, Percival v. General Motors Corp.*, 539 F.2d at 1129.

The ultimate legal issue is whether the federal government's transfer of a debtor's pre-bankruptcy federal income tax overpayment—tax refunds—to the Iowa Child Support Recovery Unit to be applied to that debtor's delinquent child support obligation constitutes an avoidable preferential transfer of that debtor's assets to the State of Iowa within the meaning of 11 U.S.C. § 547(b).

The Plaintiffs are the joint Chapter 7 Debtors in this case whose federal income

tax overpayments were transferred to the State of Iowa by the Internal Revenue Service rather than refunded to the Debtors.

One of the Debtors had previously been ordered to pay child support for a dependent by a court either in a dissolution of marriage or paternity proceeding.[1] Subsequent to the support order, the custodial parent who was to receive the court ordered child support applied to the State of Iowa, Department of Social Services, in order to supplement their income with Aid to Families with Dependent Children (AFDC). As a condition precedent to receiving AFDC from the State of Iowa, the potential aid recipient had to assign to the State of Iowa the right to receive child support payments from the Debtor. 42 U.S.C. § 602(a)(26). Thus, as a result of the assignments of support rights, the Debtor responsible for providing such support became primarily liable to the State. 42 U.S.C. § 656.

The Debtor's payments to the state had not been kept current. As a result of the delinquency, the State sought to collect the back support payments by invoking 26 U.S.C. § 6402(c). That statute allows the State to divert any of a taxpayer's tax overpayments then being held by the federal government from the taxpayer to itself, and thereby reduce the taxpayer's child support delinquencies. The Child Support Recovery Unit properly notified the Internal Revenue Service pursuant to 26 U.S.C. § 6402 and *Iowa Administrative Code,* § 770, ch. 95, that the Debtor was delinquent in making the required child support payments to the State. By the end of 1981, the Biddles had overpaid their 1981 federal income taxes. In due course, the Biddles filed a federal income tax return for the 1981 tax year, making a claim for a refund of the amounts by which they overpaid their 1981 federal income taxes. On April 24, 1982, pursuant to 26 U.S.C. § 6402(c), the Internal Revenue Service manually transferred the Biddles' overpayment of $737.20 from their account to the State of

Iowa and the funds were then physically transferred to the State of Iowa on June 18, 1982. The Biddles filed their joint Chapter 7 Petition in Bankruptcy on June 24, 1982, and received their Discharge on September 8, 1982. It is the involuntary diversion of the tax overpayments which the Debtor claims to be an avoidable preference within the meaning of 11 U.S.C. § 547(b). An understanding of the dimensions of this issue requires a description of this tax overpayment diversion procedure.

As a taxpayer earns income throughout the year, he, concomitantly, incurs an income tax liability. Generally, the taxpayer is paying in money to the IRS to cover these tax liabilities, either in the form of quarterly tax installments or in taxes withheld from their paychecks and remitted to the federal government by their employers. In many cases, the money paid into the federal government as income taxes exceeds the amount of tax the taxpayer will ultimately owe to the government for that tax year. The amount by which a taxpayer's actual liability is exceeded by the amount paid in to the federal government is deemed by the Internal Revenue Code to be an "overpayment." 26 U.S.C. § 6401(b), § 6403. When the taxpayer files his income tax return for the year, he will include on that return a claim for any refund owing to him by the federal government, resulting from his "overpayment" of income tax. 26 U.S.C. § 6511(a). Upon receipt of such a claim, the IRS is authorized by 26 U.S.C. § 6402(a) to rebate the "overpayment" to the taxpayer in the following manner:

> In the case of any overpayment, the Secretary, ... may credit the amount of such overpayment ... against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsection [6402] (c), refund any balance to such person.

---

1. It is not clear from the facts presented to the Court which of the two joint debtors was ordered to pay the child support. However, it is immaterial to the question now before the Court. Hereinafter we will refer to the joint debtors as "the Biddles," and we will refer to the support-paying parent as "the Debtor."

Thus, the Secretary first checks the tax records to see if the taxpayer has any outstanding tax liabilities owing to the federal government. If such a tax liability is discovered, any "overpayment" claimed by the taxpayer is reduced by the amount of the outstanding federal tax liability. If any overpayment remains after it is used—if at all—to fulfill obligations owed by the taxpayer to the federal government, the Secretary must then determine, pursuant to 26 U.S.C. § 6402(c), whether any or all of the "overpayment" must be paid over to a state child support recovery office to pay the taxpayer's delinquent child support obligation to that state:

> The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any *past-due* support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act (42 U.S.C. § 664). The Secretary shall remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for *past-due* support has been paid to the State. 26 U.S.C. § 6402(c). (Emphasis added).

■ In order for a state to utilize this "overpayment" diversion provision, it must meet four requirements. First, a state must show that it is the assignee of the child support payments which the taxpayer was originally ordered to pay over to the custodial parent in a dissolution or paternity decree.[2] Second, a state must show that the child support payments owing to it from the taxpayer are "past-due" within the meaning of 42 U.S.C. § 664(c). "Past due support means the amount of a delinquency determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child..." 42 U.S.C. § 664(c); *Iowa Admin.Code* § 770, ch. 95.7(1).[3] Third, a state must show that it has made reasonable efforts to collect the amount of "past-due" support through other available collection processes. *Temporary Treasury Regulation,* § 304.6402–1(b)(2)(i). Fourth, a state must then submit to the Special Collection Activities Unit, Office of Child Support Enforcement, Department of Health and Human Services (hereafter HHS) by October 1st of each year a notification of a taxpayer's liability for the past-due support. Temporary Treasury Regulation, § 304.-6402–1(c).[4]

Once a state complies with the aforementioned requirements, a federal administrative process is set into motion to divert the appropriate individual tax overpayments from the federal government to the respective states. Upon receiving proper notice from the various states, HHS must by December 1st of each year consolidate and transmit to the Internal Revenue Service the notifications of liability for past-due support. *Temporary Treasury Regulation* § 304.6402–1(c)(3).

> Upon receiving notice that a named individual owes past-due support which has been assigned to such State ... the Sec-

---

**2.** This assignment is executed by the person receiving the child support payments which were ordered in the dissolution of marriage or paternity decrees. Such assignment must be executed as a condition precedent to that person's being eligible to receive AFDC. 42 U.S.C. § 602(a)(26).

**3.** Under Iowa procedure, this requirement does not mean that the state must commence a separate action to determine the amount of a person's delinquency. Rather, the requirement that the "delinquency [be] determined under court order" refers to the fact that the debtor was initially compelled by a court order in a

dissolution or paternity action to make support payments. The delinquency arises when the debtor falls behind in these court ordered payments. The state may use the available collection procedures to recover these delinquencies without having to return to court.

**4.** Prior to the time the Defendant may invoke 26 U.S.C. § 6402(c), it is required by state administrative rule to send to a debtor a pre-offset notice and afford him an opportunity to contest the amount the Defendant claims is due. *Iowa Admin.Code,* § 770, ch. 95.7(4).

retary of the Treasury shall determine whether any amounts, as refunds (overpayments) of federal taxes paid, are payable to such individual. If the Secretary of the Treasury finds that any such amount is payable, he *shall withhold* from such refunds an amount equal to the past-due support. 42 U.S.C. 664(a). (Emphasis added).

The Secretary of Treasury "shall [then] remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation or past-due support has been paid to the state." 26 U.S.C. § 6402(c).

The Debtors did not challenge the means taken by the State to divert their tax overpayments. Therefore the Court assumes that the State properly utilized this overpayment diversion procedure, and received from the IRS monies which would have otherwise been refunded to the Debtor. The monies received by the State arose out of overpayments of federal income tax made by the Debtor for the tax years 1981 and before. The Debtor filed for bankruptcy in 1982, and had filed the 1981 income tax returns with claims for the refund of the 1981—and earlier—tax overpayments. The Debtors contend that these overpayment transfers constitute preferential payments to the State and are avoidable pursuant to 11 U.S.C. § 547(b).

## I. SUBJECT MATTER JURISDICTION

■ Both the IRS and the State (hereafter referred to collectively as the Defendants) argue that regardless of whether the diversion of the Debtor's income tax overpayments to the State constitutes a preference, the Bankruptcy Courts do not have subject matter jurisdiction to hear and decide these cases. Defendants rely on 26 U.S.C. § 6305(b):

No court of the United States, whether established under article I or article III of the Constitution shall have jurisdiction whether legal or equitable, brought to restrain or review the assessment and collection of amounts by the Secretary ... [for the purpose of recovering child support debts]. This subsection does not preclude any legal, equitable or administrative action against the State by an individual in any State court or before any State agency to ... recover any such amount collected from him under this section.

On its face, section 6305(b) appears to require the Debtor to litigate the preference questions in State court. Such is not the case. Section 1471(b) of Title 28 of the United States Code states:

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11.[5]

This language clearly overrides the restriction of federal jurisdiction found in 26 U.S.C. § 6305(b). Section 1471(b) "is in accordance with the intent of Congress to bring all litigation within the umbrella of the bankruptcy court, irrespective of Congressional statements to the contrary in the context of certain specialized litigation." *In re Unit Parts*, 9 B.R. 386, 389 (Bkrtcy.W. D.Okla.1981) (assertion by NLRB that it alone has jurisdiction to determine employee back pay, discharge, and rehiring claims is overridden by the scope of 28 U.S.C. § 1471(b)). Furthermore, there can be no doubt that a preference question is a civil proceeding arising under Title 11. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 445–46 (1977); *Smith v. Kansas City Title and*

---

**5.** 28 U.S.C. § 1471(c) then refers all of the bankruptcy jurisdiction vested in the district courts to the bankruptcy courts. Although the U.S. Supreme Court has ruled that 28 U.S.C. § 1471(c) is unconstitutional, *Northern Pipeline*

*Const. v. Marathon Pipeline Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Court did not invalidate 28 U.S.C. § 1471(a) or 28 U.S.C. § 1471(b). *Matter of Hansen*, 702 F.2d 728, 729 (8th Cir.1983).

*Trust Co.,* 225 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). Therefore, the Court finds that it has the requisite subject matter jurisdiction to decide these cases.

## II. PREFERENCES UNDER 11 U.S.C. § 547(b)

The statutory requirements which must be met by persons seeking to avoid transfer of property as a preference are set out in 11 U.S.C. § 547(b):

(b) The trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition ...; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

### A. *Standing of the Debtors to Sue to Avoid a Preference*

■ The Defendants contend that since § 547(b) provides only that "the trustee may avoid" a transfer, the Debtors suing on

their own behalf have no standing to sue. The point, however, is not well taken.

Pursuant to § 522(h), the debtor is authorized to avoid a transfer of property pursuant to § 547 if the trustee does not attempt to avoid such transfer.[6] The debtor's ability to avoid such transfers is limited, however, in that the debtor may only avoid a transfer of property to the extent the debtor could have exempted such property under § 522(g)(1) if the trustee had avoided the transfer. Section 522(g)(1) provides that the debtor may exempt certain property which the trustee recovers[7] if the debtor could have exempted that property had it not first been transfered and if the transfer was involuntary. A debtor therefore has the right under § 522(h) to avoid a preferential transfer of property which the debtor could have exempted if the trustee had sought to avoid the transfer and have the property turned over, so long as the transfer to be avoided is an involuntary transfer.

The Biddles did not claim their interest in the 1981 tax refunds exempt pursuant to *Code of Iowa* § 627.6(10) (1983), and the case has now been closed after the Court received and approved the Trustee's Report of No Distribution. Arguably, the Debtor has no standing under § 522(h) to avoid the transfer of the tax refund because it was not claimed exempt.

However, § 522(h) does not state that the debtor must have actually exempted the property, it merely states that the debtor may avoid the transfer if the debtor *could have* exempted the property had the Trustee avoided the transfer. It seems clear that the Debtor *could have* claimed the tax

**6.** 11 U.S.C. § 522(h) provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a set off to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section ... 547, ... of this title ...; and

(2) the trustee does not attempt to avoid such transfer.

**7.** 11 U.S.C. § 522(g) provides:

(g) ... [T]he debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

refund exempt under the Iowa Code and under § 522(g)(1) if the Trustee had avoided the transfer of the tax overpayment because the transfer from the IRS to the State was an involuntary transfer and the Debtor did not conceal the property.[8]

The Court therefore holds that because the Debtor *could have* exempted the tax refund under § 522(g)(1), the Debtor has standing to seek to avoid the transfer under § 522(h).

### B. *The Diversion of Debtors' Income Tax Overpayments as Preferences.*

■ In preference cases, the party seeking to avoid the transfer has the burden to prove that all of the elements of 11 U.S.C. § 547(b) have been met in order to avoid a transfer of property as a preference. *In re The Music House,* 11 B.R. 139, 7 B.C.D. 882, 5 C.B.C.2d 1240 (Bkrtcy.D.Vt.1980). The Court finds that the involuntary diversion of the Debtor's tax overpayments was for the benefit of a creditor—namely, the State—on account of an antecedent debt the Debtor owed to the State for delinquent child support. 11 U.S.C. § 547(b)(1), (b)(2). In addition, the determination of whether the Debtor was insolvent at the time of the transfer will depend entirely upon the Court's determination of the date the transfer of the tax overpayments occurred. If the transfers of the Debtor's tax overpayments took place on or within 90 days of the filing of the various petitions in bankruptcy, the Debtor is presumed to be insolvent. 11 U.S.C. § 547(f). Since Defendants have not made any effort to rebut the presumption of insolvency, this presumption will become conclusive if the Court finds that the transfers took place within the 90-day preference period. 11 U.S.C. § 547(b)(3). If, however, the Court finds that the transfer of the tax overpayments took place more than 90 days before the filing of the Debtors' bankruptcy petitions, there is no preference because the requirements of 11 U.S.C. § 547(b)(4)(A) will not have been

shown, and the actual insolvency of any Debtor will cease to be relevant. Thus the Court's inquiry focuses on two points: first, when did the transfer of the Debtor's property occur, and, second, did that transfer allow the State to get a greater share of the Debtor's estates than it would have received had transfers not occurred and the State obtained its distributive share through the administration of the cases.

■ This Court holds that there was an involuntary transfer of a lien interest in the Debtor's income tax overpayments to the State on January 1, 1982, the day after the end of the Debtor's 1981 tax year. The federal procedure which diverts the income tax overpayments to the State is, essentially, an elaborate collection device. The Debtor is required to pay monthly child support because of a state court order arising out of a dissolution of marriage or paternity decree. In addition, Iowa law requires that the State have tried and failed to collect the delinquent support owing to it by means of billing the Debtors or by taking court action. *Iowa Admin.Code,* § 770, ch. 95.7(2)(a). When the State then made use of the federal diversion procedure pursuant to 26 U.S.C. § 6402(c), it was, essentially, attempting to levy on the Debtor's tax overpayments as a means of collecting the delinquent child support owing to it. Once the State has met all of the requirements under 26 U.S.C. § 6402(c), the action taken by the IRS to divert the tax overpayments are completely controlled by statute. Neither the Secretary of Health and Human Services nor the Secretary of the Treasury has any discretion to turn down a proper request by a state Child Support Recovery Office for a particular debtor's tax overpayment. Rather, the statute requires that the Secretary of Treasury remit any available overpayment to the state submitting the request once there is a finding that such overpayment exists. 26 U.S.C. § 6402(c). The Court holds that the use of this procedure gives to the State a "charge against or interest in [the tax overpay-

---

**8.** A problem arises in that the Debtor did not claim the tax refund as exempt property, although the Debtor had every opportunity to do so while the case was open. However, 522(h) speaks only in terms that the Debtor *could have* exempted the property and there seems to be no requirement that the Debtor actually has claimed it as exempt property.

ments] to secure payment of ... [the delinquent child support] debt;" and is, therefore, a lien against the tax overpayments within the meaning of 11 U.S.C. § 101(28).

By virtue of its acquisition of a lien interest in the tax overpayments, those overpayments became security for the State's claim against the Debtors for delinquent child support. 11 U.S.C. § 506(a); *see* also, *In re Washington,* 6 B.R. 226, 6 B.C.D. 1094 (Bkrtcy.E.D.Va.1980).[9] Since the State's lien interest gave it a secured claim in the Debtor's tax overpayments the Court will look to the date the lien interest arose to determine whether the elements of a preference have been met. *Matter of Jefferson Mortgage Co. Inc.,* 25 B.R. 963, 967–968 (Bkrtcy.D.N.J.1982).[10] The Court deems that the State's lien interest attached to the Debtor's tax overpayments at the end of the tax years, that is, on January 1, 1982.[11] It is on this date that the Debtor became both liable for the taxes and entitled to make a claim for a refund of the tax overpayments. In other words, it is at the end of the tax year that the Debtor acquires rights in the property within the meaning of 11 U.S.C. § 547(e)(3); and it is thus at this time that the Debtor's tax overpayments are first subject to being transferred to the Defendants.[12] The Biddles did not file for bankruptcy on or within 90 days of January 1, 1982—the date upon which the State's lien interest arose. Since the date on which the State acquired its lien interest in the Debtor's tax overpayments was outside the 90-day preference period, 11 U.S.C. § 547(b)(4)(A), there was no preferential transfers of the tax overpayments, notwithstanding the fact that the State did not actually receive the overpayments until within the 90-day period. *Matter of Jefferson Mortgage Co. Inc.,* 25 B.R. at 967–968.

## III. THE NATURE OF THE DEFENDANT'S LIEN INTEREST IN THE DEBTOR'S TAX OVERPAYMENTS

■ Arguably, if the State has a lien interest in the Debtor's tax overpayments,

9. The Debtors may not defeat the State's interest in the overpayments simply by filing for the entire amount of their respective tax overpayments. Rather, a Debtor seeking to recover his tax overpayments has only two means of reclaiming those funds. First, he may pay off the delinquent support obligation owing to the State. This process is no different from most other secured transactions, wherein the *in rem* obligation running from the security to the creditor is released once the *in personam* obligation is fulfilled. None of the Debtors claim that they have made payments to the State and thereby discharged their obligation. Second, a Debtor could challenge the existence or size of the obligation in state court. Under the *Iowa Administrative Code,* a Debtor is given an opportunity to challenge the State's claims prior to the time the state files a tax overpayment diversion request with the IRS. (see note 4 supra). There is no evidence before this Court to show that any Debtor availed himself of that procedure prior to the time the overpayments were diverted. Barring the use of these two methods of reasserting his rights to the tax overpayments, such overpayments remain subject to the State's claim.

10. The State's claim in the Debtors' tax overpayments will be secured to the full amount of the overpayment eventually diverted to it. Under 26 U.S.C. § 6402(c), the IRS may divert to the State only so much of a Debtor's tax overpayment as is necessary to satisfy the State's child support claim. Any excess is refunded to the Debtor. *See* also *Temporary Treasury Regulation* § 304.6402–1(d)(1), (3).

11. It is true that the amount of a Debtor's tax liability may not be fully determined as of January 1, 1982. Likewise, there is the possibility that a Debtor will not file a claim for a tax overpayment. Nevertheless, at that point in time, there are funds of the Debtors being held by the IRS which are not subject to federal tax. These funds must belong to someone. In the first instance, that someone is the Debtor. That being the case, there is a *res* to which the State's interest can attach. The fact that the Debtors' rights in the tax overpayments are inchoate does not make them nontransferable. *In re Kendrick & King Lumber Co.,* 14 B.R. 764, 767 (Bkrtcy.W.D.Okla.1981).

12. Arguably, the State's lien interest arises at the time it files notice of a claim for a debtor's tax overpayment with the Secretary of Health and Human Services by October 1 of each tax year. *Temporary Treasury Regulation* § 304.6402–1(c). As of that date, a taxpayer has paid in money to the IRS and thus there would be a *res* to which the State's lien interest could attach. Because the Court's finding that the transfer occurred on January 1, 1982, disposes of the preference issue, it is not necessary to determine if the transfer occurred at an earlier time.

such a lien is judicial in nature within the meaning of 11 U.S.C. § 101(27), and therefore avoidable by the Debtor because it impairs an exemption to which he or she is entitled. 11 U.S.C. § 522(f)(1). The Defendants argue that the lien interest is statutory in nature within the meaning of 11 U.S.C. § 101(38), and therefore is not subject to avoidance by virtue of the limitation on preference avoiding powers contained in 11 U.S.C. § 547(c)(6).[13]

The definition of the term "lien" contained in 11 U.S.C. § 101(28) is "intended to encompass all three kinds of liens defined under the Code: judicial liens, security interests, and statutory liens." *Collier on Bankruptcy,* 15th ed., vol. 1, ¶ 101.28, at p. 101–64.2 (1979). Under the decisional law, these three types of liens are mutually exclusive. *Pennsylvania Dept. of Public Welfare v. Griggs,* 12 B.R. 443, 4 C.B.C.2d 1035 (Bkrtcy.E.D.Pa.1981). Clearly, the process used by the State to obtain its interest in the Debtor's tax overpayments was nonconsensual in nature, and, therefore, the lien interest held by the State is not a "security interest" within the meaning of 11 U.S.C. § 101(37). Therefore, the State's lien interest is either judicial or statutory.

This Court holds that the State's lien interest is statutory in nature within the meaning of 11 U.S.C. § 101(38). The State's interest in the Debtor's property arises solely by operation of the federal statute. Unlike traditional state collection remedies such as garnishment and execution—which give rise to judicial liens within the meaning of the Bankruptcy Code—26 U.S.C. § 6402(c) does not require any court process or involvement of court personnel for the State to establish its interest in the Debtors' property. The State need only meet the procedural requirements outlined by the statute and then file its request with the IRS on time to establish its lien. Moreover, 26 U.S.C. § 6402(c) was enacted by Congress, an entity independent from the State which issued the child support decree. Congress enacted 26 U.S.C. § 6402(c) to supplement state efforts at collecting delinquent child support. States were given the means to collect on child support obligations nationwide. S.R. 97–139, 97th Cong., 1st Sess., at p. 507 (1981), U.S.Code Cong. & Admin.News, p. 396. Thus, even though 26 U.S.C. § 6402(c) may be viewed as a collection device, it cannot be said to be the type of collection mechanism which flows from a state's traditional duty to create a means of enforcing and collecting upon judgments rendered by its courts.

The Court therefore concludes that the transfer of the Debtor's 1981 tax overpayment in the amount of $737.20 from the Internal Revenue Service to the State of Iowa was not an avoidable preferential transfer within the meaning of 11 U.S.C. § 547.

IT IS THEREFORE ORDERED that summary judgment be entered in favor of the Defendants, and, therefore the Plaintiffs' complaint seeking to avoid the transfer of the Debtor's federal income tax overpayment made by the Internal Revenue Service to the State of Iowa as a preference within the meaning of 11 U.S.C. § 547(b) is hereby denied and dismissed.

IT IS FURTHER ORDERED that the foregoing shall constitute the Findings of Fact and Conclusions of Law.

---

**13.** It should be noted that if this Court finds that the State's lien interest is statutory in nature, then the date the transfer took place—so long as it is pre-petition—is not relevant. Pursuant to 11 U.S.C. § 547(c)(6) the Trustee may not avoid the fixing of a statutory lien notwithstanding the fact that all of the elements of 11 U.S.C. § 547(b) have been shown.