Gloria GARDENIA et al.

v.

Nicholas NORTON, Individually and as Commissioner of the State Welfare Department.

Civ. No. N–74–225.

United States District Court, D. Connecticut.

March 5, 1976.

Bruce A. Morrison, New Haven, Conn., Richard McCarthy, Bridgeport, Conn., for plaintiffs.

Paige J. Everin, Asst. Atty. Gen., Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

This suit challenges on statutory and constitutional grounds the efforts of Connecticut's Welfare Department to deter fraud and lessen the consequences of fraud on the state's treasury. Plaintiffs have launched a broad-based attack on the actions formerly taken by the defendant Commissioner of Welfare following the conviction for welfare fraud of a supervising relative receiving assistance under the Aid to Families with Dependent Children [AFDC] program. Plaintiffs originally complained that the automatic termination of AFDC benefits—or any reduction in such benefits—to those supervising relatives convicted of welfare fraud creates two classes of dependent children, one that receives full AFDC benefits and one that suffers the loss of the supervising relative's AFDC payments because of a conviction for welfare fraud. This classification was claimed to be invalid under the Equal Protection Clause of the Fourteenth Amendment. There are also claims that certain Connecticut and federal policies toward supervising relatives convicted of welfare fraud violate the enabling legislation of the AFDC program and that these regulations and procedures are therefore void under the Supremacy Clause. These statutory claims can be considered without convening a three-judge court. *Hagans v. Lavine,* 415 U.S. 528, 543–45, 94 S.Ct. 1372, 39 L.Ed.2d 977 (1973).

■ The Aid to Families with Dependent Children program (42 U.S.C. § 601 *et seq.*) is designed to provide needy and dependent children with a minimal income level sufficient to secure the basic necessities of life. The protection of such children is the paramount goal of AFDC. *King v. Smith,* 392 U.S. 309, 325, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

The individual plaintiffs in this case are supervising relatives who have been convicted of welfare fraud under Conn.Gen.

Stat. § 17–83i. After conviction, plaintiff Gardenia was notified that her portion of the AFDC benefits would be withheld until the withheld amount equalled the amount of money fraudulently obtained under the program. She was also notified that she would not be able to participate in the Medicaid (42 U.S.C. § 1396 *et seq.*) and Food Stamp (7 U.S.C. § 2011 *et seq.*) programs, although her children would remain eligible for those forms of government assistance. Plaintiff Violet underwent an essentially similar experience. Ms. Aster was convicted of welfare fraud and subsequently informed that she would be terminated from the Work Incentive Program (42 U.S.C. § 630), which permits an exemption of certain earned income for purposes of determining eligibility for AFDC benefits. If Aster were terminated from the Work Incentive Program, the entire family's AFDC grant would have been lost because Ms. Aster was earning employment income greater than the AFDC flat grant for her two children.

■ On October 21, 1974, this Court issued a preliminary injunction ordering that the defendant restore benefits to all members of the class of persons convicted of welfare fraud pending final disposition of this action.* That order enjoined the defendant from enforcing the state welfare regulation that required a person convicted of welfare fraud to be discontinued under the AFDC program (Welfare Manual, Vol. 1, Chap. III, 385.9(B)). On November 14, 1974, Commissioner Norton submitted a set of Emergency Regulations to the Secretary of the State which significantly altered the Welfare Department's approach to supervising relatives convicted of welfare fraud. Although these regulations expired after 120 days, they have subsequently been reinstituted and are presently in effect. Under the new guidelines recoupment is limited to 8½% of the grant on a monthly basis until the overpayment is recovered,

---

* The injunction was issued with respect to plaintiffs' statutory claim because this claim presented a fair ground of litigation and the balance of hardships tipped decidedly toward the plaintiffs, who would most likely be barred from collecting retroactive benefits if they prevailed on the merits.

and if such a recovery would cause the recipient undue hardship, the case is to be referred to the office of the Deputy Welfare Commissioner who may reduce the amount of recoupment based on the individual facts in each particular case. (Welfare Manual, Vol. 1, Chap. III, 386(B)(1)(emergency regulation)). Under the emergency regulation an AFDC recipient convicted of fraud remains eligible for medical assistance and the Food Stamp program. Therefore plaintiffs' claims insofar as they relate to disqualification from these programs are moot. See *Hall v. Beals,* 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969).

Plaintiffs have renewed their claims that the recoupment provision, as revised, conflicts with requirements of federal law. That issue has been submitted as if on cross-motions for summary judgment since no material facts are in dispute.

Plaintiffs argue that the revised regulation, which allows the state to recover 8½% of the flat grant, violates the letter and the intent of 42 U.S.C. § 602(a)(7) and 45 C.F.R. § 233.20(a)(3)(ii). The statute requires the state agency *"in determining need"* to "take into consideration any other income and resources of any child or relative claiming aid to families with dependent children." The regulation provides that in determining "financial eligibility and the amount of the assistance payment," the state plan can permit consideration of "only such net income as is actually available for current use on a regular basis. . . ." Plaintiffs' contention is that any recoupment deducted from a grant that itself is designed to meet the bare subsistence requirements of a family unit is impermissible unless it can be demonstrated that the family then has additional currently available resources.

When states have relied upon presumptions that uniformly impute income to an AFDC recipient under certain circumstances, with the result that AFDC eligibility is denied or that AFDC grants are reduced,

courts have found such presumptions to violate the Social Security Act, 42 U.S.C. § 602(a)(7). *King v. Smith, supra; Solman v. Shapiro,* 300 F.Supp. 409 (D.Conn.) (three-judge court), *aff'd,* 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969); see *Van Lare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Lewis v. Martin,* 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *Reyna v. Vowell,* 470 F.2d 494 (5th Cir. 1972). The present controversy involves the converse proposition: does a state violate the Act when it reduces AFDC grants without finding or even presuming that income is available to a child?

When Connecticut reduces the amount of *assistance* given to any family unit under the AFDC program, it does not violate the statute, which requires income and resources to be considered only in determining *need.* The standard of need and the level of assistance payments differ from each other in that the former is set by the state pursuant to the Act and reflects the state's judgment as to the minimum amount of money necessary to assure economic security. *King v. Smith, supra,* 392 U.S. at 318 n.14, 88 S.Ct. 2128. The level of benefits that a state determines it will pay to AFDC recipients may be an amount less than the level of need. The 8½% recoupment regulation does not affect the determination of the standard of *need* at all, but rather furthers a legitimate state fiscal goal by a percentage reduction in the amount of assistance given to an individual AFDC unit. The unit remains eligible for AFDC benefits and receives the bulk of the benefits that a normal AFDC unit would receive. Thus the statute is not violated by the Connecticut emergency regulation because the determination of *need* is not affected at all by the Connecticut policy.[1] *Cf. Cooper v. Laupheimer,* 316 F.Supp. 264, 269 (E.D.Pa.1970); see *Rosado v. Wyman,* 397 U.S. 397, 413, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Johnson v. White,* 528 F.2d 1228 (2d Cir. 1975).

---

1. Since this Court concludes that recoupment is permissible under the federal statutory scheme, the claim that the federal regulations permitting recoupment (45 C.F.R. § 233.-20(a)(12)(i)(A)(2) and 45 C.F.R. § 233.-20(a)(12)(F)) are invalid is similarly rejected.

■ The regulation upon which plaintiffs rely, 45 C.F.R. § 233.20(a)(3)(ii), requires that the defendant *"consider"* only available resources in both determining financial eligibility and the amount of assistance payment. The regulation is not violated when the defendant recoups 8½% of the AFDC award. The regulation only specifies those resources that may be considered in determining the amount of assistance payment. It does not require that the state make its determination as to the amount of assistance payment based *solely* upon income. For instance, in *Johnson v. White, supra,* the Court of Appeals for this Circuit approved a Connecticut policy that limited the AFDC rental allowance to an AFDC child residing with a non-needy, non-legally liable relative. Judge Friendly wrote that:

> The most reasonable construction of this provision is not that it was an attempt by Connecticut to attribute income which in fact was not available to the dependent children . . ., but rather that it was an effort . . . to make sure that relatives did not profit by charging outrageous rents to children who were in no position to protect themselves. *Johnson v. White, supra* at 1237.

Thus it is clear that the state may consider legitimate policy objectives in determining the level of assistance payments and is not restricted solely to considering the child's income and resources in that determination.

■ This reading of 45 C.F.R. § 233.-20(a)(3)(ii) is bolstered by reference to 45 C.F.R. § 233.20(a)(12)(i)(A)(2) which states that:

> Where . . . overpayments were occasioned or caused by the recipient's willful withholding of information concerning his income, resources or other circumstances which may affect the amount of payment, the State may recoup prior overpayments from current assistance grants irrespective of current income or resources.

The objectives of preserving the fiscal integrity of the AFDC program and discouraging abuse of the AFDC program are served by this regulation. Since it can reasonably be presumed that HEW did not intend to enact two mutually exclusive regulations, see *Rosado v. Wyman, supra* 397 U.S. at 415, 90 S.Ct. 1207; *Jackson v. Department of Public Welfare of the State of Florida,* 317 F.Supp. 1151, 1160 (M.D.Fla. 1970), the two regulations in question should be construed to be consistent. A state must consider income and resources in determining the level of assistance payments, but may also recoup some portion of that level of payment to further other legitimate state objectives.

■ Plaintiffs further contend that the recoupment policy is contrary to 45 C.F.R. § 233.20(a)(3)(viii), which requires "that payment will be based on the determination of the amount of assistance needed." Connecticut, however, continues to comply with this regulation when it recoups 8½% of assistance payments in cases of welfare fraud. The amount of assistance needed remains the basis for determining AFDC payments, but the state simply considers another factor in reducing those payments, and, as previously stated, thereby furthers a legitimate state objective.

■ Finally, the plaintiffs urge that the recoupment of some AFDC benefits from the supervising relative effectively adds a condition of eligibility for AFDC benefits beyond those imposed by Congress. The gist of this argument is that in order to receive full AFDC benefits a child must be supervised by a relative who has not been convicted of welfare fraud, and this is not a statutory condition of eligibility. This contention is unpersuasive. Children whose supervising relative has been convicted of welfare fraud remain *eligible* for AFDC benefits. The reduction in actual assistance payments is an entirely different process from the determination of a child's threshold eligibility for the AFDC program. The defendant is free to make adjustments in the level of assistance payments without transgressing the requirement that eligibility determinations are to be made under federal standards. *Cf. Townsend v. Swank,* 404 U.S. 282, 291, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971).

The Social Security Act does impose some limitations upon the defendant's ability to recoup. The defendant may not thwart the purpose of the AFDC program by denying an otherwise eligible child full payments because his supervising relative fraudulently obtained past overpayments, if such recoupment would in fact deprive a dependent child of a minimum standard of health and well-being. Recoupment must be waived if an eligible child has *need* for the additional 8½% of the full AFDC assistance payment. *J.A. v. Riti,* 377 F.Supp. 1046, 1051 (D.N.J.1974); *Harrell v. Harder,* 369 F.Supp. 810, 825–26 (D.Conn.1974); *Holloway v. Parham,* 340 F.Supp. 336, 342–44 (N.D.Ga.1972); see *Bradford v. Juras,* 331 F.Supp. 167, 170 (D.Ore.1971); *Cooper v. Laupheimer, supra* at 268. This limitation upon the power of the state to recoup is recognized in 45 C.F.R. § 233.20(a)(12)(F):

> [I]f recoupments are made from current assistance payments, the State shall, on a case-by-case basis, limit the proportion of such payments that may be deducted in each case, so as not to cause undue hardship or (sic) recipients.

The regulation clearly comports with the intent and language of 42 U.S.C. § 601 and 42 U.S.C. § 602(a)(10).

The Connecticut regulation allows recoupment "unless undue hardship would be caused. In such cases, on a case-by-case basis, referral is made to the Office of the Deputy Commissioner clearly indicating the reasons why such recoupment would be undue hardship." The regulation is not entirely clear as to the process by which the initial determination that undue hardship would be caused is made. In order to comply with 45 C.F.R. § 233.20(a)(12)(F), the Connecticut regulation must be read to require the defendant to conduct a case-by-case inquiry to determine the hardship imposed upon the AFDC child by an 8½% recoupment *before* any recoupment can take place. The defendant may not presume that an 8½% recoupment will not cause undue hardship, but must have some individualized basis to support that conclusion.

Upon a finding that 8½% recoupment would cause undue hardship the Connecticut regulation provides that "the proportion recouped *could* be reduced from eight and one-half percent based on the individual facts on (sic) each separate case." The use of the word "could" in the regulation is ambiguous because the sentence is written in the passive tense. However, it is clear that in order to comport with the federal regulations and the Social Security Act, the Connecticut regulation must impose upon the defendant the mandatory duty to waive or reduce recoupment if undue hardship would be caused by full 8½% recoupment. Thus "could" as used in the regulation must be interpreted to mean "should." Webster's New International Dictionary (2d ed.) indicates that this is a proper meaning to assign to the word "could." In short, the defendant is required to waive or reduce recoupment if undue hardship would result from such repayment.

Having concluded that the plaintiffs' statutory claim is unavailing, the Court will vacate forthwith the injunction previously entered. That leaves for decision only the claim that the state's recoupment regulation denies plaintiffs the equal protection of the laws. Plainly this claim is without merit. The rational policy of deterring welfare fraud amply justifies the "classification" the state has made between children in families receiving full AFDC benefits and those in family units subject to a maximum 8½% reduction. *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972). On the constitutional claim, the Court rules that plaintiffs are not entitled to a declaratory judgment that the recoupment provision is unconstitutional. Since it is doubtful, in light of the Court's ruling on the statutory claim, that plaintiffs would seriously renew their earlier claim for injunctive relief in connection with the constitutional issue, the Court simply declines to make any ruling with respect to that claim, and therefore dismisses the complaint on the merits. See *Stone v. Philbrook,* 528 F.2d 1084 (2d Cir. 1975).