**In re Brian William WALLEN and Robin Lynn Wallen a/k/a Robin Kripps, Debtors.**

**Brian William WALLEN, Plaintiff,**

v.

**COMMISSIONER OF INCOME MAINTENANCE, STATE OF CONNECTICUT, Defendant.**

**Bankruptcy No. 5–83–00433.
Adv. No. 5–83–0548.**

United States Bankruptcy Court,
D. Connecticut.

July 14, 1987.

Francis X. Dineen, New Haven Legal Assistance Ass'n, Inc., New Haven, Conn., for plaintiff.

Wilbur Ward Dinegar, Asst. Atty. Gen., State of Conn., Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiff,[1] a chapter 7 debtor, instituted this adversary proceeding pursuant to Bankruptcy Code §§ 727(b) and 523(a)(5)(A), seeking a determination that a debt allegedly arising from the assignment of support rights to the defendant State of Connecticut ("State") as a condition for receiving Aid to Families with Dependent Children ("AFDC") under Title IV–D of the Social Security Act, as amended, is dischargeable. In addition, the plaintiff's second count requests compensatory damages for contempt and violation of his civil rights arising out of the interception and retention of his 1982 federal income tax refund or, in the alternative, the recovery of that refund.[2]

## BACKGROUND

Under the AFDC program established by the Social Security Act of 1935, as amended, 42 U.S.C. §§ 601 *et seq.*, the federal government provides partial reimbursement to participating states which render financial assistance to families with needy dependent children. *See Lukhard v. Reed,* — U.S. ——, 107 S.Ct. 1807, 1810, 95 L.Ed.2d 328 (1987); *King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968); *Gardenia v. Norton,* 425 F.Supp. 922, 925 (D.Conn.1976). In order to receive federal funds, a participating state must administer the program in conformity with the Act and regulations of

---

**1.** The amended complaint names Brian Wallen and his wife, Robin Wallen, as plaintiffs. However, the assigned debt at issue was incurred only by Brian Wallen. Any debt Robin Wallen may have owed to the State did not arise by virtue of an assignment to the State as a condition of eligibility for public assistance, and the discharge issued in this case was effective as to her obligation. Therefore, only Brian Wallen has standing to institute this proceeding.

**2.** By order of this court, dated June 12, 1984, the plaintiff's claim for attorney's fees under 42 U.S.C. § 1988 was reserved for separate hearing. On December 4, 1985, the plaintiff withdrew the third count of his amended complaint in which he sought to avoid an alleged preferential transfer to the State of his 1981 federal income tax refund which he claimed as exempt property.

the United States Department of Health and Human Services (formerly the Department of Health, Education, and Welfare). *See Lukhard, supra,* 107 S.Ct. at 1810; *King, supra,* 392 U.S. at 316–17, 88 S.Ct. at 2133. The 1974 amendments to the Social Security Act[3] require that a state providing AFDC benefits receive an assignment of support rights[4] from the applicant or recipient which creates a debt owed to the state by the individual responsible for such support. The Omnibus Budget Reconciliation Act of 1981 ("Budget Act")[5] authorizes the Secretary of the Treasury, under certain conditions, to intercept and transmit directly to a state any federal income tax refund due individuals who are delinquent in making child support payments which have been assigned to the state under the AFDC program.

The following facts, relevant to the issues presented in this proceeding, are viewed in the context of that statutory scheme:

1. The plaintiff's family, including his two minor children, Cheryl and Dawn, received public assistance from the State under the AFDC program for various periods from December, 1972 through July, 1982.[6]

2. On December 30, 1975 and December 29, 1978, the plaintiff's wife, Robin Wallen, executed documents for the State entitled "Assignment of Rights to Support, Pursuant to Title IV of the Social Security Act as Amended," whereby she assigned to the State "all the support rights (accrued, pending and continuing) which [she had] against [the plaintiff] Brian Wallen for the support of" Cheryl and Dawn, respectively.[7]

3. During March, 1978, the plaintiff signed a support agreement with the State which required him to reimburse the State for AFDC payments received on behalf of Cheryl.[8]

4. On June 26, 1979, as a result of a petition for support filed by the State, the plaintiff was ordered to make payments to the Family Relations Division of the Connecticut Superior Court to reimburse the State for AFDC it had expended on behalf of Dawn.[9]

5. The aforementioned assignments, agreement, and court order created a debt owed by the plaintiff to the State.

6. In September, 1982, the plaintiff's name was certified to the United States Treasury through the Office of Child Support Enforcement of the Department of Health & Human Services in order to offset his 1982 federal income tax refund against his delinquent support obligations to the State.[10]

7. On April 29, 1983, the plaintiff and his wife filed a joint petition for relief under chapter 7 of the Bankruptcy Code. A debt of approximately $15,000.00 owed to the State for AFDC payments received by the plaintiff's family was included in his Schedule A–3. The plaintiff also listed a 1982 federal income tax refund in the amount of $449.00 as exempt property on his Schedule B–4.

8. On September 22, 1983, the plaintiff and his wife received a discharge in bankruptcy.

9. On or before May 11, 1983, the State received a United States Treasury check, dated May 5, 1983, for $390,453.39, of which $441.97 was identified on May 16, 1983 as the plaintiff's intercepted 1982 tax refund and was credited to his AFDC account on that date.

---

**3.** *See infra* p. 903 for statutory text.

**4.** Connecticut imposes a common law and statutory familial support obligation on a spouse and parent. *United States v. Edwards,* 572 F.Supp. 1527, 1536–37 (D.Conn.1983) (*citing Fitzmaurice v. Buck,* 77 Conn. 390, 59 A. 415 (1904); Conn. Gen.Stat. § 46b–37 (1983)).

**5.** *See infra* pp. 902–03 for statutory text.

**6.** Plaintiff's Exhibit 4, ¶ 3.

**7.** Plaintiff's Exhibits 5 and 6.

**8.** Amended Complaint ¶ 11; Answer to Amended Complaint ¶ 11.

**9.** Amended Complaint ¶ 16; Answer to Amended Complaint ¶ 16.

**10.** Plaintiff's Exhibit 4, ¶ 11.

10. On May 12, 1983, the State received notice of the plaintiff's chapter 7 petition at the Bureau of Collection Services to which Department of Income Maintenance accounts are referred for collection.

## DISCUSSION

## I

## DISCHARGEABILITY OF DEBT ARISING OUT OF ASSIGNMENT OF SUPPORT OBLIGATION

### (a)

### Governing Law

The plaintiff contends that the determination of the dischargeability of his AFDC debt is limited to and governed exclusively by Code § 523(a)(5)(A). Prior to the enactment of the Budget Act, Code § 523(a)(5)(A) (1978) provided in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; ...

Section 2334(a) and (b) of the Budget Act amended the Social Security Act and Code § 523(a)(5)(A), respectively, as follows:

(a) Section 456 of the Social Security Act is amended by adding at the end thereof the following new subsection:

"(b) A debt which is a child support obligation assigned to a state under section 402(a)(26) [42 U.S.C. § 602(a)(26)] is not released by a discharge in bankruptcy under Title 11, United States Code."

(b) Section 523(a)(5)(A) of title 11, United States Code, is amended by inserting before the semicolon the following:

"(other than debts assigned pursuant to section 402(a)(26) [42 U.S.C. § 602(a)(26)] of the Social Security Act)".

According to the plaintiff, his AFDC debt is dischargeable because it does not come within the (a)(5)(A) exception to discharge, and that result is not altered by the Budget Act amendments. Similar arguments were made without success by the same attorney in *In re Leach*, 15 B.R. 1005 (Bankr.D. Conn.1981) and in *In re Esposito* and *In re Marro*, 31 B.R. 872 (Bankr.D.Conn.1983) (consolidated for trial). As this court observed in *Esposito*:

The debtors seek to distinguish *Leach* and [In re] *Spell* [650 F.2d 375 (2d Cir. 1981) (courts must apply the law in effect at the time dischargeability is determined).[11]] by a progression of arguments which *inter alia* contend that the purpose of the Budget Act is to protect children, that the Budget Act must be read with Code section 523(a)(5)(A) to apply only in cases where the obligation arises out of a separation agreement, divorce decree, or property settlement agreement, and that there is a conflict between Code section 727(b) and the Budget Act which must be resolved in favor of the debtors' discharge of the child support obligation. The debtors further argue that even if the Budget Act excepts child support obligations assigned to the State, its application in these cases would be retroactive and thus improper. Finally, the debtors contend that they have a vested right to a discharge of these obligations.

There is no merit to the debtors' claims. A traditional approach to statutory construction is to analyze the language of a statute in the context of legislative intent on the assumption that the legislative branch chose particular words to accomplish a specific purpose.

Here, the debtors' argument seems to suggest that Congress is without authority to amend the law or to provide for limitations upon a debtors' discharge in any body of law other than the Bankruptcy Code. Congress labors under no

---

**11.** It is noteworthy that the plaintiff's attorney also represented the debtor in *Spell*.

such restraint. It is abundantly clear from the plain language of the Budget Act that Congress intended to modify the statutory formula for discharge under Code sections 727(b) and 523(a)(5)(A) by amending section 456 of the Social Security Act. The effect of the amendment, for the purposes of these proceedings, was to add to the exceptions to discharge provided by Code section 523(a), an additional exception—to wit, debts which are child support obligations assigned to the State under 42 U.S.C. § 602(a)(26). (footnotes omitted).

*In re Esposito, supra,* 31 B.R. at 875–76.

As a variation on the *Leach, Esposito,* and *Marro* theme, the plaintiff argues that Budget Act subsections 2334(a) and (b) are inconsistent. As the plaintiff reasons, since Congress enacted two separate subsections concerning the effect of an assignment made under the AFDC program, those subsections must have different meanings. According to the plaintiff, subsection (a), amending the Social Security Act, is a general provision relating to the rights of the debtor's family after discharge, while subsection (b), amending Code § 523(a), is a specific provision pertaining to the rights of the state after discharge. Therefore, the plaintiff contends, under rules of statutory construction, the more specific bankruptcy provision must prevail, which, he claims applies only when there has been a "separation agreement, divorce decree or property settlement agreement".

■ The premise underlying the plaintiff's argument that the provisions of Budget Act § 2334 are inconsistent is invalid and leads to a conclusion which distorts congressional intent. The subsections are not inconsistent in that both were drafted to prevent the discharge in bankruptcy of support obligations assigned to a state. Moreover, it is apparent that Congress enacted subsection 2334(b) to avoid any incon-

sistency with subsection 2334(a). A contrary construction would subvert the AFDC program by limiting the scope of recoupment to those debts which arise out of separation agreements, divorce decrees, or property settlement agreements.

As the Supreme Court has stated:

[w]hen "interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such construction as will carry into execution the will of the Legislature...."

*Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974) (*quoting Brown v. Duchesne,* 19 How. 183, 184, 15 L.Ed. 595 (1857)). Thus, in order to carry out legislative intent, a better reading of § 2334 requires that Code § 523(a)(5)(A) be read as a single concept, so that the amendment made by § 2334(b) modifies the entire (a)(5)(A) subsection and applies to the nondischargeability of all debts assigned under the AFDC program.[12] Such a reading gives meaning to the statutory scheme created in the Budget Act and is mandated by *Kokoszka v. Belford, supra.* Accordingly, I remain unpersuaded by the argument which in effect attempts to avoid the consequences of an act of Congress by claiming that it was not intended to do what it expressly states it does, and conclude that the law governing this proceeding is § 523(a)(5)(A) as amended by § 2334(b) of the Budget Act as construed herein.

### (b)

### Validity of Assignment Under State Plan

■ Alternatively, the plaintiff contends that even if § 2334 of the Budget Act is applicable, his debt[13] is outside the scope

---

**12.** This court recognizes that it did not reach this conclusion in *Leach* and its progeny, but rather relied on § 2334(a), which amended the Social Security Act, to arrive at the same result in order to carry out the policy underlying the Budget Act.

**13.** Support rights assigned under 42 U.S.C. § 602(a)(26) create a debt in favor of a state providing AFDC payments. 42 U.S.C. § 656(a)(1)(1975) provides in pertinent part that:

of that section because the assignments to the State were not made pursuant to a valid state plan as mandated by § 402(a)(26) of the Social Security Act, 42 U.S.C. § 602(a)(26), and implemented by valid regulations.

42 U.S.C. § 602(a)(26) provides in pertinent part that:

A state plan for aid and services to needy families with children must ...

provide that, as a condition of eligibility for aid, each applicant or recipient will be required—

(A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed.

■ To bolster his argument, the plaintiff points to the State's failure to adopt a policy for implementation of its plan in accordance with the Connecticut Uniform Administrative Procedure Act ("UAPA"), Conn.Gen.Stat. § 4–166, *et seq.* and relies upon *Persico v. Maher,* 191 Conn. 384, 465 A.2d 308 (1983) in which it was determined that a Department of Income Maintenance policy not adopted as a regulation in conformity with the UAPA was void. *Id.* at 400, 465 A.2d 308.

The State contends that the amendment to Conn.Gen.Stat. § 17–3f, enacted in response to *Persico,* retroactively corrected any defect in the state plan and its implementation. Conn.Gen.Stat. § 17–3f (1984) provides in pertinent part:

*All policy manuals of the department [of income maintenance], as they exist on May 23, 1984,* including the supporting bulletins but not including statements concerning only the internal management of the department and not affecting private rights or procedures available to the public, *shall be construed to have been adopted as regula-*

*tions in accordance with the provisions of chapter 54 [UAPA].* (emphasis added)

The plaintiff, however, maintains that Conn.Gen.Stat. § 17–3f is inapplicable in this proceeding due to the prohibition found in Conn.Gen.Stat. § 1–1(u) (1975) that "[t]he passage or repeal of an act shall not affect any action then pending."

The plaintiff's argument is without merit. It is well settled in Connecticut that where vested rights have not intervened, a validating act may be applied retrospectively to pending cases to "make legal and regular that which was illegal and irregular," *Manchester Environmental Coalition v. Stockton,* 184 Conn. 51, 71, 441 A.2d 68 (1981) (*quoting Connecticut State Employees Ass'n, Inc. v. Connecticut Personnel Policy Board,* 165 Conn. 448, 334 A.2d 909 (1973)); *see also Wethersfield v. Nat'l Fire Ins. Co.,* 145 Conn. 368, 369–70, 143 A.2d 454 (1958); *Moran v. Bens,* 144 Conn. 27, 31, 127 A.2d 42 (1956). Moreover, it is fundamental bankruptcy law that a discharge, such as that entered in this case on September 22, 1983, does not discharge all debts but rather only those debts that are dischargeable under the Code. *See* §§ 727(b) and 523(a); *In re Esposito, supra,* 31 B.R. at 876, (*quoting Leach, supra,* 15 B.R. at 1007 ("[T]he discharge ordered ... merely released the debtor from his dischargeable debts.")). Accordingly, the plaintiff has no vested right to a discharge of his debt to the State and his challenge to the State's implementation of the AFDC program must fail in light of the subsequent action taken by the Connecticut legislature explicitly providing for the retroactive validation of the State's implementing policies and procedures. *See Doe v. Maher,* 40 Conn.Sup. 394, 400 n. 10, 515 A.2d 134 (Super Ct.1986) (in an action pending at the time of its amendment, Conn.Gen.Stat. § 17–3f deemed to retroactively validate a Department of Income

---

The support rights assigned to the State under section 602(a)(26) of this title shall constitute an obligation owed to such State by the individual responsible for providing such sup-

port. Such obligation shall be deemed for collection purposes to be collectible under all applicable State and local processes.

Maintenance policy which had not been adopted in compliance with the UAPA).

On November 1, 1975, procedures to obtain assignments of support rights were adopted by the Connecticut Department of Income Maintenance [14] to satisfy the requirements of Social Security Act § 402(a)(26) and the federal regulations implementing that Act.[15] Those procedures, which as noted, have subsequently been validated by Conn.Gen.Stat. § 17–3f, constitute the State's compliance with the "state plan" requirements of the Social Security Act amendments and were accepted as such by the Regional Commissioner of the Department of Health, Education, and Welfare on December 19, 1975, effective August 1, 1975.[16]

The assignment documents executed by the plaintiff's wife in 1975 and 1978 as conditions precedent to the receipt of public assistance specifically stated that "[t]his assignment is subject to the terms and conditions of Section 402(a)(26) of Title IV of the Social Security Act as amended." [17] The assignments were made as part of a cooperative federal-state program which resulted in payments by the State to the plaintiff's family and the reimbursement of a portion of those funds by the federal government upon application by the State. Failure of the State to comply with the federally mandated assignment requirements would have resulted in the loss of federal funds for the AFDC program, an event which has never occurred.[18]

As noted, Congress unquestionably intended to carve away from dischargeable debts those arising out of the AFDC program. The State has complied with the mandates of the applicable federal and state law. Accordingly, I conclude that the assignments of the plaintiff's support obligations to the State are effective and create a nondischargeable debt.

(c)

Scope of Nondischargeable Debt

Finally, the plaintiff contends that in the event the assigned obligation is determined to be excepted from discharge, certain portions of the debt are nevertheless dischargeable because (i) only child support was assigned; (ii) future rights to support may not be assigned; (iii) the assignment was not based on his actual financial circumstances; and (iv) nondischarge of his debts impairs his spouse's discharge. This progression of arguments is discussed seriatim.

█ (i) The plaintiff asserts that the child support obligation assigned to the State is limited to the support owed to the child. His attorney reiterates the claims he made in *Esposito, supra,* 31 B.R. at 877, that where Congress intended the provisions of the Budget Act to apply to spousal and child support, both support rights were specifically mentioned,[19] whereas section 2334(a) is limited to child support by its express terms. The plaintiff attempts to distinguish *Esposito* in that here his wife did not specifically assign her right to support to the State, as did the spouse in *Esposito.* I find that this is a distinction without a difference. Connecticut and fed-

---

**14.** Conn.Gen.Stat. § 17–11 (1975) provided that: the [commissioner of income maintenance] is authorized and empowered to accept any and all allotments of federal funds and commodities, and to manage and dispose of the same in whatever manner is required by federal law, and to take advantage of any amendments and supplements to the federal social security act and of any other federal act relating to public welfare, and to conform to such federal requirements as are conditions precedent to the receipt of federal matching grants and are not prohibited by the general statutes.

**15.** Testimony of Vincent B. Capuano, Chief of the Division of Resources of the Connecticut Department of Income Maintenance. Tr. at 15.

**16.** Defendant's Exhibit A. Approval of a state plan by the Department of Health, Education, and Welfare mandated that the administrative state agency require, as a condition of eligibility for AFDC, the assignment to the State of support rights including accrued rights from any other person that the applicant or recipient might have in his own behalf or in behalf of any other family member for whom assistance is sought or is being received. *See* 45 CFR 232.11 (1975).

**17.** Plaintiff's Exhibits 5 and 6.

**18.** Testimony of Vincent Capuano, Tr. at 18.

**19.** Budget Act, §§ 2331, 2332, 2333.

eral courts have recognized that support and maintenance of a child may encompass all expenses necessary to maintain the child in life and health, including support for the child's caretaker. *See Peterson v. Norton,* 395 F.Supp. 1351, 1355 (D.Conn.1975); *Faraday v. Dube,* 175 Conn. 438, 443–44, 399 A.2d 1262 (1978), *In re Esposito, supra,* 31 B.R. at 877. Therefore the total AFDC debt is nondischargeable.

■ (ii) Next, the plaintiff contends that at the time the 1975 assignment was made, there were no assignable obligations and that only accrued obligations may be assigned. Pursuant to 42 U.S.C. § 602(a)(26) an applicant or recipient must assign to the State "any rights to support from any other person such applicant may have." This statutory language clearly provides for the assignment of future rights, and is not limited, as the plaintiff asserts, to those support obligations which had accrued at the time the assignment was made. *See Matter of Stovall,* 721 F.2d 1133, 1135 (7th Cir.1983); *In re Walden,* 60 B.R. 641, 645 (Bankr.M.D.Fla.1986); *In re Wilson,* 29 B.R. 254, 257 (Bankr.D.Kan.1983).

(iii) The plaintiff also claims that to the extent the assignments were not based upon his actual financial circumstances, his support obligation should be retroactively modified to reduce the nondischargeable amount under Conn.Gen.Stat. § 17–82e. This court will not modify the plaintiff's debts which were established under State law. It is therefore unnecessary to consider the State's contention that repayment orders were set at a reasonable level.

■ (iv) Finally, the plaintiff submits that his wife's discharge is impaired to the

extent that his support obligation is not excepted from discharge, and that in the interest of providing her with the full benefit of her discharge, the subject debt should also be discharged. The plaintiff offers no judicial decision or commentary or even any legal theory to support this position which appears to invite the court to defy an act of Congress specifically directed against the result he seeks. The requested relief cannot be and is not granted.

## II.

## VIOLATION OF AUTOMATIC STAY

The second count of the plaintiff's amended complaint alleges that the State violated the automatic stay provided by Code § 362(a)(1)[20] by the post petition interception and retention of his 1982 federal income tax refund, claimed as exempt property, for which the plaintiff seeks compensatory damages or the return of the $441.97 refund. The State contends that the automatic stay was not violated because the collection process, authorized by the Budget Act, had been completed prepetition on December 15, 1982, the last date on which the State claims the plaintiff's name could have been decertified to the IRS, thereby stopping the interception.

Thus, in the first instance, it must be determined when the plaintiff's right to the refund was extinguished. An examination of the statutory scheme and its legislative history together with the judicial interpretation of constitutional safeguards implicated by the tax-intercept program, leads to the conclusion that a tax refund claimant subject to interception loses the right to the refund when interception can no longer be

---

**20.** Code § 362(a)(1) (1981) provides that:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

The plaintiff's allegations might arguably support claims, which the plaintiff did not assert, that the State's action violated the automatic stay provisions of § 362(a)(5) and (6) which prohibit

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

averted. The legislative history of the AFDC program reflects a congressional effort to assist the states to recover past-due support assigned to them as a condition of eligibility for public assistance. The Social Security Amendments of 1974 permitted the states to utilize the federal income tax collection mechanism for recovering delinquent support payments in cases in which the states could establish to the satisfaction of the Department of Health, Education, and Welfare that diligent efforts to collect the payments through other means had been unsuccessful. *See* S.Rep. No. 1356, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 8133, 8153. Upon receiving certification from the Secretary of Health, Education, and Welfare of the amount due the state from the obligated person, the Secretary of the Treasury was directed to "assess and collect the amount ... in the same manner, with the same powers, and (except as provided in this section) subject to the same limitations as if such amount were a tax...." 26 U.S.C. § 6305.

That procedure was "amplified" by the tax-intercept provisions, enacted as part of the Budget Act, in order to make collection through the IRS more effective. *See* S.Rep. No. 139, 97th Cong., 1st Sess. 521, *reprinted in* 1981 U.S.Code Cong. & Ad-

min.News 396, 787. Budget Act § 2331(a) and (c)[21] authorize the Secretary of the Treasury, upon notification by a state of persons owing past-due support which has been assigned to the state, to withhold the amount of delinquent support from the tax refunds due such individuals and to transfer those funds directly to the state as reimbursement for AFDC expenditures.

The tax-intercept program thus implements a federal policy encouraging the collection of past-due support obligations, *Sorenson v. Secretary of the Treasury of the United States*, 475 U.S. 851, 106 S.Ct. 1600, 1609, 89 L.Ed.2d 855 (1986), by providing the states with an efficient collection mechanism to recoup funds held by the federal government. *Coughlin v. Regan*, 584 F.Supp. 697, 704 n. 13 (D.Maine 1984), *aff'd on other grounds*, 768 F.2d 468 (1st Cir. 1985); *Marcello v. Regan*, 574 F.Supp. 586, 597 (D.R.I.1983). The direct diversion to the state of tax overpayments withheld from the non-support paying taxpayer, in effect, requires the Secretary of the Treasury "to give priority to a State's claim for recoupment of welfare payments made to a family who failed to receive child support, ... over an individual's claim for refund of a tax overpayment." *Sorenson, supra,* 106 S.Ct. at 1604.

---

**21.** Budget Act § 2331(a) amended the Social Security Act by adding *inter alia* § 464(a) and (c), 42 U.S.C. § 664(a)(1) and (c)(1), which provide that:

> (a)(1) Upon receiving notice from a State agency administering [an AFDC program under an approved State plan] ... that a named individual owes past-due support which has been assigned to such State pursuant to section 402(a)(26), the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to the past-due support, and pay such amount to the State agency (together with notice of the individual's home address) for distribution in accordance with section 457(b)(3).
>
> (c)(1) [A]s used in this part the term "past-due support" means the amount of delinquency, determined under a court order, or an

order of an administrative process established under State law, for support and maintenance of a child, or of a child and the parent with whom the child is living.

Budget Act § 2331(c) amended the Internal Revenue Code of 1954 by adding § 6402(c), 26 U.S.C. § 6402(c), which provides that:

> The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. The subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

In the context of a fifth and fourteenth amendment due process challenge to the procedures adopted by the state and federal governments under the tax-intercept law, it has been observed in this circuit that an individual to whom a tax refund is owed is deprived of that property at the time the individual's name can no longer be removed from the notice sent to the Secretary of the Treasury pursuant to Budget Act § 2331(a). *Nelson v. Regan,* 560 F.Supp. 1101, 1109 (D.Conn.1983), *aff'd on other grounds,* 731 F.2d 105 (2d Cir.) *cert. denied sub nom. Manning v. Nelson,* 469 U.S. 853, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984).[22]

■ In the instant case, notification to the Secretary of the Treasury would have been final and the plaintiff's rights to the tax refund would have been extinguished on December 15, 1982, as the State contends, but for an order entered by the district court in *Nelson v. Regan, supra.* The plaintiff received notice from the State in September, 1982, indicating that his name might be referred to the IRS so that the State could recover past-due support obligations. One month later, the plaintiff was notified that his name had been sent to the IRS and that pre-interception review was available upon receipt of a written request within fifteen days. According to the *Nelson* court, these notices to the plaintiff, a member of the *Nelson* class, evidenced the State's "good faith efforts to comply with the requirements of due process ... allowing ample time before the fifteenth of December, the last day on which the certified lists submitted for administrative review of the certification of names to the IRS may be updated." *Nelson v. Regan, supra,* 560 F.Supp. at 1109. In its subsequent "Ruling on Remedy and Final Order", the district court ordered the State to supplement the two notices received by persons certified to the IRS in 1982 as owing past-due support payments

assigned to the State. Such notice was to be sent to "persons as were identified by the IRS as individuals potentially eligible for a tax refund informing them of their right to an administrative hearing and of their right to raise defenses...." *Nelson v. Regan,* Civ. No. N–82–173, slip op. at 17 (D.Conn. Apr. 22, 1983). This order restored the plaintiff's right to the tax refund in that he retained a due process right to contest the amount and validity of the State's AFDC claim through appropriate administrative procedures. I therefore conclude that the plaintiff's right to the refund was not extinguished prior to the filing of his bankruptcy petition, but that conclusion is not dispositive of the automatic stay issue presented here.

■ Initially it must be noted that even if the State's action were a violation of the automatic stay, the plaintiff would not be entitled to the compensatory damages he seeks because of the eleventh amendment prohibition against claims by private parties against a state. *In re Arminio,* 38 B.R. 472, 480 (Bankr.D.Conn.1984) (*citing Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (retrospective compensation payable from public funds in the state treasury is barred by the eleventh amendment)).

■ Moreover, as to the plaintiff's claim for the return of the refund, it is observed that a statutory lien in favor of a state attaches to a support obligor's tax refund upon the notification under Budget Act § 2331(a) by the state to the Secretary of the Treasury.[23] *In re Wilkerson,* 22 B.R. 728, 731 (Bankr.E.D.Wis.1982) (intercept law places a statutory lien on tax refund at time state gives notice to Secretary of the Treasury), *cf. In re Biddle,* 31 B.R. 449, 456 n. 12 (Bankr.N.D.Iowa 1983) (since IRS holds taxpayers' money, state's statutory lien interest may arise on date the state files notice of its claim to tax refund).

---

**22.** The conclusion that an individual's rights to the tax overpayment is extinguished when his name can no longer be decertified to the Secretary of the Treasury is further supported by the subsequent amendment of § 464 of the Social Security Act (42 U.S.C. § 664), which requires the states to provide due process protection *be-*

*fore* the state certifies the obligated taxpayer's name to the IRS.

**23.** It should be noted that the State's notice must be filed prior to the end of the tax year before the taxpayer may claim the refund.

However, before a state may enforce that lien, proper notice must be served upon the support obligor to satisfy the due process concerns enunciated by the district court in *Nelson.* To hold otherwise would diminish the Budget Act objective of promoting the recoupment of AFDC obligations.[24]

Reduced to its simplest terms, the issue here is who has the best claim to the tax refund? Under *Nelson,* the plaintiff was given an opportunity to challenge the interception. Instead of availing himself of that opportunity, the plaintiff, through his attorney, elected to write the following letter to his family relations officer on April 25, 1983:

> Dear Madam:
>
> I believe the income tax refund of Brian Wallen was improperly intercepted, on the above account. Please forward to me any child support assignment in the matter. If there is none, please see that Mr. Wallen's refund of ... $449.00 for 1982, [is] promptly refunded.

Four days thereafter he filed a chapter 7 petition claiming the refund as exempt property. Had the plaintiff availed himself of the administrative procedures established in *Nelson,* an expedited determination would have been made as to whether the State had the right to the refund. Instead the plaintiff elected to waive his rights under that procedure and attempted to avoid the Budget Act interception by asserting his right to the refund under bankruptcy law.

 A debtor's right to a tax refund, attributable to prepetition income, is property of the bankruptcy estate even if the refund is received post petition. *In re Bien,* Adv. No. 5–87–0069, slip op. at 5 (Bankr.D.Conn. Feb. 6, 1987) (*citing Kokoszka v. Belford,* 417 U.S. 642, 648, 94 S.Ct. 2431, 2435, 41 L.Ed.2d 374 (1974)). Moreover, the only estate property to which a chapter 7 debtor has a right is that proper-

ty which may be claimed as exempt under Code § 522(b). Here, the plaintiff has exercised that right by claiming the refund as exempt, but that property is not free from Code § 523(a)(5) debts. Thus, the plaintiff is attempting to defeat the intercept process by claiming the exemption of property which is by law subject to or "liable for" the § 523(a)(5) AFDC debt owed to the State. *See* § 522(c)(1).[25] Under these circumstances, it is clear that even in the absence of a statutory lien, the State has a prior right to the refund. This result is consistent with the federal policy which gives priority to a state's claim of recoupment over an individual's claim for a tax refund. *Sorenson, supra,* 106 S.Ct. at 1604.

The automatic stay should not be read to require the State to engage in a useless act. No useful purpose would be served by requiring the State to deliver a refund to the plaintiff which is subject to the State's claim. On the contrary, to force the State to pursue the plaintiff in this court to seek relief from the stay in order to prosecute him in state court to recoup funds expended from the State treasury elevates form over function and, as noted, undermines the congressional scheme which provides the State direct access to the refund through a simplified collection procedure. Deference to congressional intent mandates that the automatic stay be viewed against the backdrop of the later enacted Budget Act to prevent interference with the cooperative federal-state framework which, with due regard for constitutional protections, subordinates the right of an individual to that of a state. As Justice Douglas remarked, "[W]e do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). This

---

24. *See supra* p. 906.

25. 11 U.S.C. § 522(c)(1) (1981) provides that:
Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section

502 of this title as if such claim had arisen before the commencement of the case, except—
a debt of a kind specified in section 523(a)(1) or section 523(a)(5) of this title.

is particularly true where, as here, a beneficiary of a social welfare program seeks to repudiate that program through the bankruptcy courts to obtain funds he clearly is not entitled to keep.

For the foregoing reasons, I conclude that the plaintiff's AFDC debt is nondischargeable and that the State did not violate the automatic stay by receiving and retaining the tax refund. The relief sought by the plaintiff is denied and judgment may enter accordingly.